# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* L. COSELMAN, Minor.

UNPUBLISHED
February 28, 2017

No.  333536
Livingston Circuit Court
Family Division
LC No.  14-013254-NA

Before:  HOEKSTRA, P.J., and SAAD and RIORDAN, JJ

PER CURIAM.

Respondent-father appeals as of right the trial court order terminating his parental rights to the minor child under MCL 712A.19b(3)(c)(*i*), (g), and (j).  We affirm.

## I.  FACTUAL BACKGROUND

Respondent and his former girlfriend, the child's mother, had an extensive history of substance abuse and illegal activity.  The child's mother became pregnant while the couple continued to struggle with significant drug addictions.  Soon afterward, however, the child's mother was incarcerated, and respondent sought drug treatment, beginning sobriety in June 2014 and subsequently living in a three-quarter house with other recovering addicts.

In November 2014, the minor child was born while his mother remained incarcerated.[1] Initially, the child was placed in the custody of his maternal grandparents, but he was removed and placed in foster care when he was five weeks old.  At the time, respondent was known to be the putative father.  Respondent later signed an affidavit of parentage in February 2015.

In February 2015, petitioner, the Department of Health and Human Services ("DHHS"), filed an amended petition requesting that the trial court exercise jurisdiction over the child based on respondent's initial failure to sign an affidavit of parentage or establish paternity; the fact that respondent was currently living in transitional housing; respondent's history of substance abuse; respondent's criminal history; and the fact that respondent had reported that he was unable to

---

[1] In an earlier order, the trial court terminated the parental rights of the child's mother.  This Court affirmed that decision in *In re Coselman*, unpublished opinion per curiam of the Court of Appeals, issued October 20, 2015 (Docket No. 326497).

-1-

care for the child at that time. The trial court accepted respondent's plea to the allegations in the petition and exercised jurisdiction over the child pursuant to MCL 712A.2(b). Later, the trial court ordered supervised parenting time and adopted the parent-agency treatment plan, which required that respondent participate in parenting classes, among other things.

Over the next year, respondent consistently participated in supervised parenting time with the child, canceling only a few visits. He also remained extremely active in programs and services aimed at strengthening his sobriety, and he never relapsed.

However, respondent did not consistently bring essential supplies—including a diaper bag with necessities for the child's care, age-appropriate food, and a stroller—to his visits with the child until December 2015, believing it was unnecessary to do so if the foster parents were providing those items or if those items were available at the visit locations. Additionally, although he was instructed to purchase a crib and car seat in order to demonstrate that he was prepared to care for the child in his own home, respondent did not obtain these items until May 2016, after the first day of the termination hearing. He expressed confusion or a lack of initiative throughout the proceedings with regard to the child's medical history and his role in participating in the child's medical care. Additionally, despite the clear requirement under the parent-agency agreement that he participate in parenting classes, respondent did not participate in structured parenting classes until early 2016.

In December 2015, respondent moved from the three-quarter house where he had been living into a sobriety-focused home with other former addicts and transitional housing managers. Although the home had a spare bedroom that was intended for the minor child, respondent never gave his caseworker the names and birthdates of the other men living in the home so that petitioner could perform background checks and approve the residence as a suitable home for the child.

In January 2016, respondent left a full-time job at the University of Michigan, which was scheduled to end in a few months, in order to pursue a full-time career as a personal trainer. However, by March 2016, he had not passed the certification exam and was only making a few hundred dollars per month. Throughout the proceedings, respondent continued to work toward his goal of becoming a personal trainer and to take online college courses, but he never secured additional employment. Instead, he relied on student loans and supplemental financial assistance from his mother in order to meet his monthly expenses.

In March 2016, respondent moved into an apartment with his girlfriend, who had been very involved during the child protective proceedings and was willing to assist with caring for the minor child. However, the apartment was under a sublease that was set to expire in August 2016, at which time the rent would increase substantially.

On March 17, 2016, petitioner filed a supplemental petition seeking termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j). In April and May 2016, the referee conducted a six-day termination hearing that began on April 29, 2016, and concluded on May 26, 2016.

In the meantime, the DHHS caseworker discovered a record indicating that the child's mother had an active Hepatitis C infection while she was pregnant with the child. Testing in May 2016 revealed that the minor child had an active Hepatitis C infection. During the termination hearing, respondent acknowledged that he was tested for Hepatitis C in 2014 and found to have reactive Hepatitis C antibodies, and that he had been tested again in January 2016. He explained that he did not mention this information to the caseworker because it was his understanding that Hepatitis C could not be contracted through a male. He could not recall if he had discussed any of this with the foster parents, and the foster father testified that he was not aware that the child had been exposed to Hepatitis C until the caseworker contacted him in May 2016. Respondent denied that he was previously aware that the child's mother had Hepatitis C, but the mother testified at the termination hearing that she, at the least, informed respondent by phone while she was incarcerated that she had an active Hepatitis C infection, believing that it was important for him to know that information if he would be caring for the minor child.

On June 9, 2016, the referee issued a 25-page, single-spaced opinion, concluding that petitioner had established, by clear and convincing evidence, a statutory basis for termination of respondent's parental rights under MCL 712A.19b(3)(c)(i), (g), and (j), and that termination was in the best interests of the child. On June 10, 2016, the trial court entered an order adopting the referee's recommendation and terminating respondent's parental rights.

## II. STATUTORY GROUNDS

Respondent argues that the trial court erred in finding that the statutory grounds for termination were established by clear and convincing evidence. We disagree.

### A. STANDARD OF REVIEW

In order to terminate parental rights, the trial court must find that a statutory basis for termination under MCL 712A.19b(3) has been established by clear and convincing evidence. *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013).

> Evidence is clear and convincing when it produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. [*In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995) (quotation marks and citation omitted; alteration in original).]

"This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding is clearly erroneous [if] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010) (quotation marks and citation omitted; alteration in original). We must give due regard "to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

### B. ANALYSIS

As an initial matter, it is important to note that both parties presented an unusually large amount of testimony and documentary evidence during the six-day termination hearing in this case. Although many aspects of the testimony provided by respondent's and petitioner's witnesses were consistent, significant portions of the testimony were not, especially in terms of whether respondent had demonstrated that he was prepared to care for the child and whether respondent had shown that he was willing and able to prioritize the child's needs over his own. As a result, given the conflicting evidence in the record, the trial court was necessarily required to make credibility determinations in order to determine whether petitioner had established a statutory basis for termination by clear and convincing evidence. Correspondingly, the referee's lengthy opinion, adopted by the trial court, contains numerous implicit credibility determinations that directly shaped the court's decision in this case. Therefore, it is apparent that the outcome of this case was directly dependent on the trial court's opportunity to observe the witnesses before it and make critical credibility determinations. MCR 2.613(C); *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).[2] As the Michigan Supreme Court remarked in *In re Miller*, 433 Mich at 337, "The deference required by MCR 2.613(C) can make a critical difference in difficult cases such as the one before us. In contrast to the reviewing court, the trier of fact has the advantage of being able to consider the demeanor of the witnesses in determining how much weight and credibility to accord their testimony." It is with this foundation that we review the trial court's findings and conclusions in this case.

The trial court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j), which permit termination under the following circumstances:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

> *   *   *

> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

> *   *   *

---

[2] It is especially noteworthy that the referee who presided over the six-day terminating hearing also presided over *all* but one of the hearings in this case. See *In re Miller*, 433 Mich at 337-338.

(j) There is a reasonable likelihood, based on the conduct or the capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

First, we conclude that the evidence supported termination of respondent's parental rights under MCL 712A.19b(3)(g). Compliance with a treatment plan is evidence of a parent's ability to provide proper care and custody for a child. *In re JK*, 468 Mich 202, 214; 661 NW2d 216 (2003). However, "it is not enough to merely go through the motions; a parent must benefit from the services offered so that he or she can improve parenting skills to the point where the children would no longer be at risk in the parent's custody." *In re Gazella*, 264 Mich App 668, 676; 692 NW2d 708 (2005), superseded in part on other grounds as stated in *In re Hansen*, 285 Mich App 158, 163; 774 NW2d 698 (2009), vacated on other grounds 486 Mich 1037 (2010). Here, it is apparent that respondent was tremendously dedicated to programs and services targeted at maintaining his sobriety and that he sustained a lasting benefit from these services, but the record supports the trial court's finding that he did not benefit to the same extent from parenting-related services. While we recognize the importance of maintaining sobriety in order to safely and effectively care for a child, the trial court did not clearly err in concluding that the record shows that respondent failed to demonstrate a *simultaneous* commitment to providing proper care and custody for the child.

Given the trial court's credibility determinations, the record confirms that respondent resisted bringing necessary supplies to parenting time visits despite receiving written and verbal directions to do so. He reasoned that it was illogical to bring duplicate items if supplies were provided by the foster family or available at the site. Likewise, he resisted purchasing items such as a crib and a car seat because he did not believe that doing so was necessary until he was granted unsupervised parenting time. As the trial court noted, instead of purchasing these required items, respondent chose to purchase items like an $80 purse for his girlfriend and a couch on a monthly payment plan for their new apartment, which were purchases outside of their means based on their monthly budget.

Furthermore, the trial court was especially troubled by respondent's claims that he was confused about nearly every aspect of the child protective proceedings, including the expectations of the parent-agency treatment plan, even though respondent indicated his ability to succeed without "hands-on direction" in college and employment settings. The record supports the trial court's finding that respondent did not have a cognitive impairment or any other issues that would impede his understanding of the expectations in this case, or prevent him from understanding the gravity of the situation, such that respondent's failure to obtain and bring the requisite supplies demonstrated that he would not be prepared to provide proper care and custody of the child in a reasonable time.

In addition, respondent did not have stable housing or an income sufficient to support a child, and he did not demonstrate that he could achieve either of those things within a reasonable time. Although respondent ultimately secured housing in which the child could live in March 2016, when he moved into a new apartment with his girlfriend, the sublease was due to expire in August 2016. Respondent did not demonstrate with any certainty when his income would increase, and he failed to show that he and his girlfriend would be able to maintain their apartment at the increased rental rate. Likewise, the trial court recognized that respondent's

current housing may have been suitable for the child, but it emphasized that the primary issue in this case was respondent's failure to demonstrate any permanence or enduring stability. Moreover, instead of taking steps to secure sufficient employment to support the child as soon as possible, respondent prioritized his interest in pursuing a career as a personal trainer—which had proven not to generate sufficient income in the immediate future, despite its future potential—and taking college courses. Given the unwillingness of respondent's mother to provide assistance to respondent earlier in the proceedings, the trial court expressed significant doubts regarding her newly stated willingness, during the termination hearing, to supplement respondent's income by as much as $1,300 per month. As the court noted, reliance on public or familial support to maintain housing does not, by itself, constitute grounds for termination, but the evidence in this case did not show that respondent, either alone or with the assistance of his girlfriend or his mother, had the ability to continue maintaining appropriate housing for the child or provide for all of his needs.

At the time of the termination hearing, the child had been in foster care for nearly 18 months. The statutory framework does not require the child to wait indefinitely for respondent to be prepared to provide appropriate care. Thus, we conclude that the trial court did not clearly err in finding that clear and convincing evidence supported termination of respondent's parental rights under MCL 712A.19b(3)(g).

Next, to demonstrate a statutory basis for termination under MCL 712A.19b(3)(j), the likelihood of harm may be physical or emotional harm, including neglect. See *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011). The evidence showed that respondent was extremely committed to his sobriety throughout the course of the proceedings, but it did not show that he was prepared to prioritize the child's needs over his own. Likewise, despite numerous discussions with agency workers and his attendance at parenting classes, respondent admitted that he did not understand the need for him to come to parenting time visits prepared to care for the child's physical needs. Notably, he expressed hesitation himself regarding whether he was able to care for the child independently. Consistent with this stated hesitation, the trial court noted the numerous instances in respondent's testimony when he expressed an inability or reluctance to take the initiative to determine what his child's needs were and how to provide for the child on his own, even though he had demonstrated an ability to work independently and successfully at previous jobs without hand-holding or constant supervision and an ability to complete college-level coursework.

Respondent also demonstrated that he did not know the child's medical history—despite the child's unique medical issues—and that he preferred to defer to the foster parents when the child received medical treatment. Further, respondent failed to report to the agency workers assisting him, the foster parents, or the child's doctor that he had tested positive for reactive Hepatitis C antibodies, and that the child's mother had tested positive for Hepatitis C,[3]

---

[3] The referee implicitly credited the biological mother's testimony and rejected respondent's claims, finding, "He knew the child's biological mother had tested positive for Hepatitis C[,] but did not mention this at the sick visit or emergency room visits he attended."

demonstrating significant concerns about respondent's ability to recognize and attend to the child's medical issues and physical well-being in the future.

Given the trial court's credibility determinations, the evidence established that, at a minimum, the child would be at a risk of harm from neglect if he were placed in respondent's custody. Thus, we conclude that clear and convincing evidence supported termination of respondent's parental rights under MCL 712A.19b(3)(j).[4]

## III. BEST INTERESTS

Respondent contends that the trial court clearly erred in determining that termination of his parental rights was in the child's best interests. We disagree.

## A. STANDARD OF REVIEW AND APPLICABLE LAW

We review for clear error a trial court's best-interest determination. *In re White*, 303 Mich App at 713, citing MCR 3.977(K). Pursuant to MCL 712A.19b(5), "[t]he trial court must order the parent's rights terminated if the [petitioner] has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the child['s] best interests." *In re White*, 303 Mich App at 713 (footnotes omitted). When a court makes a best-interest determination, it should weigh all available evidence, *id.*, and its focus should be on the child rather than the parent, *In re Moss*, 301 Mich App at 86-87.

> To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (footnotes omitted); see also *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012).]

## B. ANALYSIS

The evidence showed that at the time of the termination hearing, the child had lived with the same foster parents since the age of five weeks; that the foster parents had provided excellent care for the child, even in the face of significant medical issues; and that the child was strongly bonded to them. Oppositely, the child has never lived with respondent and never participated in

---

[4] Because "[o]nly one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights," *In re Ellis*, 294 Mich App at 32, we need not separately consider whether the trial court properly terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*).

overnight or unsupervised visits with him. Although the record shows that respondent's visits with the child were consistently appropriate and positive, and that respondent had developed a bond with the child, the witnesses' testimony clearly indicates that the child shared a stronger bond with the foster parents.

With regard to respondent's parenting skills, the trial court credited the testimony of agency workers who noted that respondent's protracted reluctance to consistently participate in parenting classes or obtain the requisite supplies indicated an inability or lack of preparedness to care for the child outside of the structured environment of supervised visits. Likewise, the record supports the trial court's finding that respondent failed to demonstrate a willingness to seek out or learn basic information crucial to the child's well-being, including his medical history and the name and address of the child's pediatrician, even though he had attended at least one visit to the pediatrician's office and a visit to the emergency room when the child was exhibiting breathing difficulties.

Respondent undoubtedly expressed good intentions and a strong interest in being a father throughout the proceedings, but the evidence in the record raises significant doubts with regard to respondent's ability or willingness to properly care for the child without direct oversight and prompting. Further, the evidence established that stability and permanence were imperative at this point in the child's life, and the trial court properly concluded that the child deserved permanence and stability, and could not be expected to wait an uncertain length of time for respondent to develop the motivation and skills necessary to be a parent.

"After [a parent's] children have come within the jurisdiction of the family court, [the] parent, whether disabled or not, must demonstrate that [he or] she can meet their basic needs before they will be returned to [his or] her care. If a parent cannot or will not meet [his or] her irreducible minimum parental responsibilities, the needs of the child must prevail over the needs of the parent." *In re Terry*, 240 Mich App 14, 28; 610 NW2d 563 (2000).

The trial court did not clearly err in finding by a preponderance of the evidence that termination of respondent's parental rights was in the child's best interests.

## IV. CONCLUSION

Although we applaud respondent's efforts to achieve and maintain sobriety, we conclude that respondent has failed to establish that the trial court clearly erred in finding that a statutory basis for termination of his parental rights had been established by clear and convincing evidence, and that termination was in the best interests of the child.

Affirmed.

/s/ Joel P. Hoekstra
/s/ Henry William Saad
/s/ Michael J. Riordan