*In re* GAZELLA

Docket No. 253008. Submitted August 4, 2004, at Grand Rapids. Decided January 4, 2005, at 9:00 a.m.

The Family Independence Agency petitioned the Saginaw Circuit Court, Family Division, to take jurisdiction over two newborn minor children of Lisa Marie Sayers-Gazella and to terminate her parental rights. After the respondent admitted the facts alleged in the petition, the court, Faye M. Harrison, J., found that the children came within the court's jurisdiction on the basis of anticipatory neglect and that statutory grounds existed to terminate the respondent's parental rights. The court entered an order terminating the respondent's parental rights and, pursuant to an agreement similar to that approved by *In re Adrianson*, 105 Mich App 300 (1981), suspended the effect of the termination order contingent on the respondent complying with all conditions of her case service plan. Following review hearings, the court found the respondent in substantial compliance with the plan, but concluded that it was nonetheless unlikely that she could care for the children within a reasonable time. The court permitted the previous termination order to take effect. The respondent appealed.

The Court of Appeals *held*:

1. The *Adrianson* order suspending the order terminating parental rights to give the respondent additional time for rehabilitation to avoid termination violated MCL 712A.19b(5) and MCR 3.977. The statute and the court rule require the court to terminate parental rights immediately when it finds that a statutory ground for termination exists and to order that no additional efforts be made to reunify the child with the parent, unless the court finds that termination of parental rights is clearly not in the child's best interests. The order was harmless, however, because the respondent benefited from the erroneous opportunity to establish that she could be a non-neglectful parent.

2. The trial court did not err in implementing the *Adrianson* order. While the respondent substantially complied with her case service plan by physically doing what was asked of her, she did not benefit sufficiently from the services offered so that she could provide a home in which the children would not be at risk.

3. The trial court stated the statutory grounds for assuming jurisdiction over the children. Additionally, whether the court stated the statutory grounds is an issue concerning the court's exercise of its jurisdiction, which could only be challenged by direct appeal of the jurisdictional decision and not by collateral attack in a subsequent appeal of the order terminating parental rights.

4. The lack of subject-matter jurisdiction may be attacked collaterally. The respondent claimed that the allegations in the petition were insufficient to establish subject-matter jurisdiction. However, allegations of past harm to the children were not required in the petition for the court to assume jurisdiction over them. A child may come within the court's jurisdiction solely on the basis of the parent's treatment of another child under the doctrine of anticipatory neglect.

Affirmed.

1. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — SUSPENDING TERMINATION ORDER.

An order suspending an order terminating parental rights to give a parent additional time for rehabilitation to avoid termination of parental rights, similar to that approved by *In re Adrianson*, 105 Mich App 300 (1981), violates MCL 712A.19b(5) and MCR 3.997, which require the court to terminate parental rights immediately when it finds that a statutory ground for termination exists and to order that no additional efforts be made to reunify the child with the parent, unless the court finds that termination of parental rights is clearly not in the child's best interests.

2. PARENT AND CHILD — JURISDICTION — ANTICIPATORY NEGLECT.

A parent's treatment of one child, without allegations of abuse or neglect of a second child, may be a sufficient basis for the court assuming jurisdiction over the second child.

*Tarrant & Tomcal, PLC* (by *Barbara J. Tomcal*), for the minor children.

*Kathleen M. Maine* for the respondent.

Before: WHITBECK, C.J., and OWENS and SCHUETTE, JJ.

OWENS, J. Respondent Lisa Marie Sayers-Gazella (respondent) appeals as of right the trial court's order of

November 29, 2003, which allowed the previously suspended order of June 5, 2003, terminating her parental rights to her two infant children pursuant to MCL 712A.19b(3)(l) and (m) to go into effect.[1] She challenges the trial court's implementation of its prior order terminating her parental rights in spite of her substantial compliance with the *Adrianson*[2] agreement. She also challenges the trial court's initial assumption of jurisdiction over the minor children. We affirm.

The minor twin children, Justin Gazella and Paige Gazella, were born March 22, 2003. A petition seeking initial jurisdiction of the children and termination of both parents' rights was authorized for filing at a preliminary hearing held three days later. The petition alleged, in part, that respondent's parental rights to a half-sibling of the twins were terminated on May 16, 2000, in Genesee County for abandonment following a 1998 petition for child neglect, and that on October 30, 2000, respondent's parental rights to a full-sibling of the twins were terminated in Saginaw County by voluntary release following initiation of child neglect proceedings. The petition, as amended, further alleged that respondent was borderline functioning and had a history of being unable to provide a stable residence. Finally, the petition alleged that respondent did not follow through with individual and marital therapy, parent training, and parent-mentoring services. At an adjourned pretrial hearing on May 30, 2003, following a careful explanation by the trial court of respondent's rights and the potential consequences of her plea, respondent admitted the facts alleged in the amended

---

[1] Respondent-father Bryce Gazella voluntarily released his rights to the two minor children under the Michigan Adoption Code, MCL 710.21 *et seq.*, on December 1, 2003, and is not a party to this appeal.

[2] *In re Adrianson*, 105 Mich App 300; 306 NW2d 487 (1981).

petition. Respondent understood that her admissions would permit the court to find that the children came within the jurisdiction of the court and that statutory grounds for termination of her parental rights existed. The court then found, on the basis of the doctrine of anticipatory neglect,[3] that the children came within the jurisdiction of the court. The court further found, on the basis of respondent's admissions, that grounds existed to terminate respondent's parental rights under MCL 712A.19b(3)(l) and (m). No evidence was offered that termination would clearly not be in the children's best interests and the court made no such finding. Immediately following the plea, the court conducted the dispositional hearing.

Following the combined pretrial/adjudication/dispositional/termination hearing, the court entered two orders. The first, an order of disposition, stated that an adjudication had been held and the children came within the jurisdiction of the court. It further ordered out-of-home placement for the children.[4] The order required respondent to comply with the case service plan dated April 25, 2003, as modified at the hearing. The second order terminated the parental rights of respondent and, pursuant to the *Adrianson* agreement, suspended the effect of the termination order contingent on respondent's compliance with all conditions of the case service plan.

Review hearings were held on September 2, 2003, and November 20, 2003, to assess respondent's progress. At the end of the November 20, 2003, hearing,

---

[3] *In re Dittrick*, 80 Mich App 219; 263 NW2d 37 (1977); *In re LeFlure*, 48 Mich App 377; 210 NW2d 482 (1973).

[4] It is this order that would have been appealable as a matter of right had respondent wished to challenge the court's finding that the children came within the jurisdiction of the court.

the court found that, to a substantial degree, respondent was in compliance with the case service plan. However, in spite of respondent's substantial compliance, the court found that her prognosis was poor to fair, that the children should not be returned to her, that she had not been honest with the caseworker, and that, notwithstanding substantial compliance with the case service plan, it was highly questionable whether she could care for the children unaided at any reasonable time in the foreseeable future given her lack of improvement. The court entered an order permitting the order terminating respondent's parental rights to go into effect. Respondent then filed this appeal.

We review for clear error the trial court's findings on appeal of an order terminating parental rights.[5] A trial court's decision to terminate parental rights is clearly erroneous if, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake had been made.[6] Respondent argues that the trial court erred in permitting the order terminating her parental rights to go into effect since she had completely complied with the terms of the *Adrianson* agreement. We disagree.

We must first examine the nature of an *Adrianson* agreement, or *Adrianson* order, and determine its current viability in light of MCL 712A.19b(5), which provides:

> If the court finds that there are grounds for termination of parental rights, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made, unless the

---

[5] MCR 3.977(J); *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000).

[6] *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

court finds that termination of parental rights to the child is clearly not in the child's best interests.[7]

Before the enactment of MCL 712A.19b(5), many courts hearing termination of parental rights cases utilized the technique approved by this Court in *Adrianson* to give parents one last chance to avoid termination of their parental rights to their children, without imposing on the petitioner (usually the state) the burden of proving its termination petition again following the additional time given to the parents for rehabilitation. In an *Adrianson* proceeding, the trial court would enter an order terminating the parents' rights following the necessary statutory findings. The court would then enter a further order suspending the order terminating the parents' rights on condition that the parents comply with certain requirements designed to assist their rehabilitation. If the parents were successful, the order terminating their rights would be set aside and never take effect. However, should the parents not be successful, the order terminating rights would be permitted to go into effect.

In an *Adrianson* proceeding, once an order terminating parental rights was entered, the petitioner need prove nothing further; the burden of proof shifted to the parents to show that they had successfully complied with the conditions under which the order terminating their parental rights was suspended.[8] However beneficial to parents *Adrianson* orders may have been, we hold today that their use violates both the statute and the court rule.[9] The statute and the court rule are clear: once the court finds there are statutory grounds for termination of parental rights, the court must order

---

[7] See also MCR 3.977(E)(3), (F)(1), (G)(3).

[8] *In re Adrianson, supra* at 319.

[9] MCL 712A.19b(5); MCR 3.977(E), (F)(1), and (G)(3).

termination of parental rights and must further order that "additional efforts for reunification of the child with the parent not be made," unless the court finds that termination of parental rights to the child is clearly not in the child's best interests. In entering an *Adrianson* order, the trial court ordered that additional efforts for reunification of the child with the parent were to be made. This is clearly no longer permissible under the statute and the court rule. Once the statutory grounds for termination have been proven (unless the court finds that termination of parental rights to the child is clearly not in the child's best interests), the court must terminate parental rights immediately. An *Adrianson* order cannot be entered.

In this case, an *Adrianson* order was entered by agreement of the parties. Because such an order was not lawful, and because respondent gave up her right to a contested hearing on the request to terminate her parental rights, we must consider whether she would be entitled to have the order terminating her parental rights set aside since she would likely never have agreed to it but for the *Adrianson* order. We hold that it need not be set aside because respondent benefited from the erroneous opportunity she was given to comply with the case service plan and establish that she could be a non-neglectful parent. This is especially true because, in this case, the grounds for terminating respondent's parental rights under MCL 712A.19b(3)(l) and (m) were a matter of court record and therefore uncontestable. In other words, she could only lose on the statutory grounds. The *Adrianson* order gave her a chance to avoid termination. It is true that, had no *Adrianson* order been entered, and had a contested hearing been held on the issue of termination, respondent could have avoided termination if the court found that termination was clearly not in the children's best interests. While

that is possible in some cases, it was extremely unlikely in this case because, when the petition seeking termination of parental rights was filed, the children were only two days old and had never established a relationship or emotional bond with respondent. On the basis of the record, it does not appear that respondent could have established by clear and convincing evidence that termination of her parental rights was clearly not in the children's best interests, especially given the history of her relationship with her other children. Therefore, while we hold that the technique approved by this Court in *Adrianson* is no longer statutorily permissible, and that its use was therefore error, we determine that the error was clearly harmless with respect to respondent.

Given our determination that use of an *Adrianson* order was harmless error with respect to respondent, we next turn to whether the trial court erred in its implementation of the *Adrianson* order. By its terms, the *Adrianson* order provided that "[t]ermination is hereby suspended contingent upon mother's compliance with all conditions of the service plan." Respondent argues that she completely complied with all conditions of the service plan and, therefore, the trial court erred in finding that the order of termination should be permitted to go into effect.

We conclude that when the trial court found that respondent was in compliance with the case service plan to a substantial degree, the trial court was speaking of her physical compliance and not whether there was a significant improvement in her ability to parent. The court found that she maintained a stable residence, she was prompt for visitations with the children, and that she engaged in counseling. However, in spite of her physical compliance with the requirements of the plan, the court found that her prognosis was poor to fair.

It is true that the *Adrianson* order only required "mother's compliance with all conditions of the service plan." "Compliance" could be interpreted as merely going through the motions physically; showing up for and sitting through counseling sessions, for example. However, it is not enough to merely go through the motions; a parent must benefit from the services offered so that he or she can improve parenting skills to the point where the children would no longer be at risk in the parent's custody. In other words, it is necessary, but not sufficient, to physically comply with the terms of a parent/agency agreement or case service plan. For example, attending parenting classes, but learning nothing from them and, therefore, not changing one's harmful parenting behaviors, is of no benefit to the parent or child.

It could be argued that a parent complied with a case service plan that merely required attending parenting classes but was silent concerning the need for the parent to benefit from them. It is our opinion that such an interpretation would violate common sense and the spirit of the juvenile code, which is to protect children and rehabilitate parents whenever possible so that the parents will be able to provide a home for their children that is free of neglect or abuse. In this case, the trial court recognized that benefiting from services, in addition to complying with the requirement to participate in those services, was necessary when, in the order implementing the order terminating respondent's parental rights, the trial court found that

> [i]mplementation of the order [terminating parental rights] was suspended pending compliance with conditions *and improvement in the situation* . . . . [Emphasis supplied.]

While it would undoubtedly have been clearer if, in the order of disposition, the trial court had ordered

respondent to both comply with and benefit from the services offered in the case service plan, we find that the failure to specify that she must benefit from the services was not error because benefiting from the services was an inherent and necessary part of compliance with the case service plan. Therefore, while in this case respondent substantially complied with the case service plan in that she physically did what was asked of her, she did not sufficiently benefit from the services offered to enable the court to find that she could provide a home for her children in which they would no longer be at risk of harm. Therefore, we find no error.

While not raised by respondent, we note that the trial court stated the following on the record, after finding that grounds for termination of respondent's parental rights existed pursuant to her plea:

> Now obviously I have not made findings on best interest because by stipulation any order terminating her parental rights will be suspended to determine whether she is able to and does comply with conditions that may be set.

From this statement, it could be argued that the termination order was entered in error because the court had not made findings on best interests. We note, however, that a court speaks through its written orders and that, in entering the order terminating parental rights, the court necessarily found that statutory grounds for termination existed and could not have found that termination of parental rights was clearly not in the best interests of the children. Neither the statute nor the court rule requires the court to make specific findings on the question of best interests, although trial courts usually do. In fact, most trial courts go beyond the question whether termination is clearly not in a child's best interests and affirmatively find that termination is in a child's best interests. Such a finding is not re-

quired, but is permissible if the evidence justifies it. The statute and the court rule provide that, once a statutory ground for termination has been established by the requisite standard of proof, the court must enter an order of termination unless the court finds that termination is clearly not in the child's best interests. If the court makes no finding regarding best interests, then the court has not found that termination would clearly not be in the child's best interests. While it would be best for trial courts to make a finding that there was insufficient evidence that termination was clearly not in a child's best interest, it is not required if no party offers such evidence, as here. For a valid termination order to be entered when no evidence is offered that termination is clearly not in the child's best interests, all that is required is that at least one statutory ground for termination be proved. If such evidence is offered by a party, the court must rule on its sufficiency. Of course, if no party presents best-interests evidence, but the court finds evidence in the record that convinces the court that termination would clearly not be in the child's best interests, the court must place that finding on the record.

Therefore, while the trial court did not make findings on best interests when the termination order was entered, this was not error since no evidence on that issue was offered. The termination order must be entered unless the court finds, by clear and convincing evidence, that termination would not be in the child's best interests, which did not happen here. The parties must be given an opportunity to present evidence on the question of best interests in a contested hearing, but, if no one does, no finding is required by the court.

In summary, while it was error for the court to utilize an *Adrianson* order delaying the effect of the order

terminating parental rights, the respondent benefited from the court's error in that she was given an opportunity she would not otherwise have had to preserve her parental rights, especially given the clear and incontrovertible evidence that statutory grounds existed to terminate her parental rights. A litigant may not harbor error, to which he or she consented, as an appellate parachute.[10] In this case, respondent benefited from the error; she may not now be heard to complain.

Next, respondent asserts as error the trial court's failure to state the statutory grounds under which the court took jurisdiction of the children pursuant to her plea. However, this alleged error is mentioned only in the statement of issues and is not discussed further. No authority is cited to support it. Hence, it is abandoned.[11] Nevertheless, we will consider it. The trial court did state the statutory grounds for jurisdiction. In finding that the children came within the jurisdiction of the court on the basis of anticipatory neglect, the trial court used the statutory terms "abandonment" and "neglect" and found that the children were at risk to their physical safety if they were placed in the custody of respondent. In addition, we note that whether the court stated the statutory grounds under which jurisdiction was taken is an issue concerning the court's exercise of its jurisdiction rather than an issue concerning whether the petition sufficiently alleged facts that, if true, would enable the court to find jurisdiction. Matters affecting the court's exercise of its jurisdiction may be challenged only on direct appeal of the jurisdictional decision, not by collateral attack in a subsequent appeal of an order

---

[10] *Marshall Lasser, PC v George*, 252 Mich App 104, 109; 651 NW2d 158 (2002).

[11] *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002).

terminating parental rights.[12] As noted earlier, the original order of disposition entered June 2, 2003, and filed June 5, 2003, stated that an adjudication was held, that the children were found to come within the jurisdiction of the court, and that they were placed in out-of-home care. That is the order that was appealable as of right to challenge the adjudication. By not appealing that order, respondent lost her right to challenge the court's exercise of jurisdiction.

Finally, respondent challenges the court's assumption of original jurisdiction over her minor children on the ground that the petition was insufficient on its face and therefore the proceedings were void *ab initio.*

As noted earlier, a court's exercise of its jurisdiction may only be challenged on direct appeal, whereas the lack of subject-matter jurisdiction may be collaterally attacked.[13] Respondent argues that the petition was insufficient on its face because it contained no allegation that the children had been harmed. Specifically, respondent argues that "[p]ast conduct is not a statutory ground for asserting jurisdiction, there must be some current physical harm or threat of serious emotional harm." Because the petition alleged no current harm to the children, but instead anticipated future neglect of the children under the *LaFleur/Dittrick* doctrine of anticipatory neglect, respondent asserts that the petition was insufficient on its face and the trial court lacked jurisdiction. We disagree.

A child may come within the jurisdiction of the court solely on the basis of a parent's treatment of another child. Abuse or neglect of the second child is not a prerequisite for jurisdiction of that child and applica-

---

[12] *In re Powers,* 208 Mich App 582, 587-588; 528 NW2d 799 (1995), citing *In re Hatcher,* 443 Mich 426; 505 NW2d 834 (1993).

[13] *In re Hatcher,* 443 Mich 426, 438-439; 505 NW2d 834 (1993).

tion of the doctrine of anticipatory neglect. As stated in *In re Dittrick, supra* at 222:

> Defendants attempt to distinguish *LaFleur* by arguing that it only permits a finding of anticipated future neglect of a second child where a finding of past neglect of the second child has already been made. We reject that distinction because we believe that the reasoning of *LaFleur* is sound, even when applied to a situation where no prior determination of neglect has been made.

In *In re Powers*, the child was born two days before the petition for jurisdiction was filed. The petition was based solely on the treatment of another child. In answering the appellant's challenge to the probate court's jurisdiction over the child based solely on the treatment of another child, this Court held:

> Consistent with *Dittrick*, we find that the principle of anticipatory neglect (or, in this case, anticipatory abuse) may provide an appropriate basis for invoking probate court jurisdiction. [*In re Powers, supra* at 589.]

Therefore, we find that the petition was not insufficient on its face and the proceedings were not void *ab initio* just because the petition alleged no past mistreatment of the infant children. The doctrine of anticipatory neglect alone was a sufficient basis for the court's jurisdiction over the children.

Affirmed.