# STATE OF MICHIGAN

# COURT OF APPEALS

In re E I GROVES, Minor.

UNPUBLISHED
October 14, 2014

No. 320356
Oakland Circuit Court
Family Division
LC No. 12-799160-NA

Before: STEPHENS, P.J., and TALBOT and BECKERING, JJ.

PER CURIAM.

M. Groves appeals as of right the order terminating her parental rights to the minor child.[1] We affirm.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met."[2] "We review the trial court's determination for clear error."[3] "A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made."[4]

The trial court did not clearly err in terminating Groves's parental rights.[5] At the time of the adjudication in September 2012, Groves acknowledged that she was involved in a domestic violence incident with the child's putative father, D. Altman, in June 2012. She also acknowledged that she tested positive for marijuana and cocaine in July 2012, and that she had mental health issues. Groves was diagnosed with Asperger's Syndrome, had social anxiety, and

---

[1] MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (g) (parent fails to provide proper care or custody of the child), and (j) (reasonable likelihood that the child will be harmed if returned to parent's home).

[2] *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011).

[3] *Id.*

[4] *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

[5] MCL 712A.19b(3)(c)(*i*), (g), and (j).

-1-

threatened to commit suicide in July 2012. Several years earlier, Groves's parents obtained guardianship of her son because she was unable to care for him.

The trial court properly found that Groves's substance abuse continued to be a significant problem. Groves failed to submit to court-ordered drug screens throughout the case. On February 20, 2013, and March 15, 2013, when the caseworker performed forensic drug screens on Groves, she tested positive for amphetamines and cocaine on the former date and amphetamines on the latter date. In March 2013, Groves was hospitalized for a suspected drug overdose and admitted to the police that she used crack cocaine and Ritalin. On July 31, 2013, when the Salvation Army offered Groves a bed in their six- to nine-month substance abuse treatment program, she refused it. Although there was conflicting testimony about whether Groves attended a nine-day detoxification program in August 2013, there was no evidence, other than Groves's own testimony, that she completed a longer rehabilitation program. In September 2013, Groves was picked up by police and hospitalized again. From September 2013 to December 2013, she was incarcerated for a charge of either driving under the influence or operating while intoxicated.

Groves's violent, unstable relationship with Altman also interfered with her ability to provide an appropriate home environment for her child. At the time of the adjudication, Groves admitted to domestic violence in her relationship with Altman. Groves frequently called the police about Altman and he was arrested multiple times for violation of a court order preventing him from going to Groves's home. On March 19, 2013, Groves contacted police, claiming that Altman attacked her and escaped through a window. However, in June 2013, after Altman was released from jail, Groves told the court-appointed special advocate, Barbara Pocock, that she was planning for reunification with Altman. Groves told Pocock that there had never been any domestic violence between her and Altman and everything she said previously was a lie. Later, at the January 2014 termination hearing, Groves testified that Altman kidnapped her in June 2013 and forced her to make those statements, as well as forced her to do drugs. Despite Groves's complaints about Altman, the record reveals she was involved with him throughout the case and never pressed criminal charges against him. Groves also testified at the termination hearing that she had stayed away from Altman since September 2013; however, she was incarcerated from September 2013 to December 2013. Groves's emotional instability and incoherent and erratic behavior, which was often associated with Altman, made it impossible for her to properly care for the minor child and put the young child at risk of harm.

Groves's inability to care for her child was also demonstrated by her transient living situation. When police observed her home in March 2013, it was untidy. Groves moved out of her apartment claiming that there were bedbugs. She was living on the streets or in a motel in July 2013. Although Groves testified that she was getting a new apartment, as of January 2014, she lived with her grandmother. Therefore, there is no evidence that Groves could maintain suitable housing, which would have been necessary for her to properly care for the minor child.

Groves argues that she was not suitably accommodated given her Asperger's Syndrome diagnosis. This claim is without merit. The trial court assigned court-appointed special advocate, Pocock, to give Groves extra assistance. When Pocock offered to help Groves set up her voicemail to assist with communication problems Groves was having, Groves refused the help. Groves also refused to sign a release of information so the caseworkers would know

whether she was compliant with services and what assistance she needed, despite being court ordered to do so. Moreover, Groves failed to indicate what type of special accommodations would have assisted her.

Finally, Groves argues that she complied with her parent-agency agreement. She claims that she completed parenting classes, participated in a psychological evaluation, completed her PACE assessment, received treatment from Easter Seals, received income from social security, regularly visited her child, and participated in two inpatient rehabilitation programs. She also asserts that she was unreasonably given only nine months to complete the parent-agency agreement before the petition to terminate her rights was filed. While Groves did complete parenting classes and her PACE evaluation, the record shows that Groves failed to complete drug screens or complete a domestic violence class with HAVEN.[6] Moreover, the record shows that Groves only participated in one nine-day detoxification program and did not appear to benefit from that program, as she was subsequently hospitalized and incarcerated. Contrary to Groves's claim, there is no evidence that she could maintain a safe home environment, free of drugs and domestic violence. Groves needed to benefit from services to the point where the minor child would no longer be at risk in her custody.[7] There was also no reasonable likelihood that the conditions that led to the adjudication would be rectified and Groves would be able to provide proper care and custody within a reasonable time given the child's age.[8] Given Groves's substance abuse issues, emotional and mental instability, and unaddressed domestic violence issues, termination of her parental rights was proper.[9]

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights."[10] "[T]he preponderance of the evidence standard applies to the best-interest determination."[11] We review a trial court's finding that termination is in the child's best interests for clear error.[12] In deciding whether termination is in the child's best interests, the trial court "should weigh all the evidence available" and "consider a wide variety of factors that may include 'the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home.' "[13]

---

[6] While the trial court did not hold the failure to complete a class with HAVEN against Groves, it noted that Groves should have sought other counseling to address domestic violence issues.

[7] See *In re Gazella*, 264 Mich App 668, 676; 692 NW2d 708 (2005), superseded by statute in part on other grounds MCL 712A.19b(5).

[8] See MCL 712A.19b(3)(c)(*i*), (g).

[9] MCL 712A.19b(3)(c)(*i*), (g), and (j).

[10] *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012); MCL 712A.19b(5).

[11] *In re Moss*, 301 Mich App 76, 83; 836 NW2d 182 (2013).

[12] *In re Olive/Metts*, 297 Mich App at 40 (citation omitted).

[13] *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014) (citation omitted).

Based on the record as a whole, the trial court did not clearly err in determining that termination of Groves's parental rights was in the child's best interests. Given Groves's history of substance abuse, domestic violence, and housing problems, the minor child would be at risk of harm in her care. Despite evidence that Groves was appropriate with the minor child at visits and that there was a bond between them, any bond was not more important than the child's safety.

Groves argues that the trial court should have given more consideration to the fact that the minor child was in a safe and stable placement before terminating her parental rights. The trial court expressly considered the child's placement with relatives, as it was required to do.[14] Contrary to Groves's claim, however, the trial court noted that there was no evidence to support giving Groves more time because she was in denial of the dangers posed by her drug use and violent relationship with Altman. The trial court specifically found that Groves had exhibited volatile, outrageous behavior, had threatened suicide, and reported near death experiences because of her illicit drug use. Given Groves's substance abuse and volatile behavior, termination of parental rights was in the child's best interests.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Michael J. Talbot
/s/ Jane M. Beckering

---

[14] *In re Olive/Metts*, 297 Mich App at 43 (holding that a trial court's failure to explicitly consider relative placement requires reversal).