# STATE OF MICHIGAN

# COURT OF APPEALS

In re SHEFFIELD, Minors.

UNPUBLISHED
June 13, 2017

No. 335652
Bay Circuit Court
Family Division
LC No. 14-011708-NA

Before: O'BRIEN, P.J., and HOEKSTRA and BOONSTRA, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating her parental rights to her children KS, JS, and AS pursuant to MCL 712A.19b(3)(c)(*i*) (the conditions that led to the adjudication continue to exist), (c)(*ii*) (other conditions exist that cause the children to come within the court's jurisdiction), (g) (parent is unable to provide proper care and custody), and (j) (child is reasonably likely to be harmed if returned to the parent's home). We affirm.[1]

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Petitioner filed a petition seeking the removal of the children from the home based on improper supervision, neglect, and the condition of the home. At a preliminary hearing, Janice White, a Child Protective Services (CPS) worker, testified that she had received a call that the police needed assistance at respondent's home, where children were present without adult supervision. The house lacked running water, electricity, and working plumbing, and had rotten food and medications scattered throughout the home. The children were dirty and had not eaten that day; JS required emergency medical attention. A police officer contacted respondent by telephone, and respondent hung up on him. White testified that she spoke with respondent, who admitted that she had spent the day drinking with family and friends. White placed the children with respondent's cousin. The trial court found probable cause to believe that the allegations of the petition were true, and authorized the petition. The trial court directed that the children be placed with a relative or in foster care, and that respondent be granted supervised parenting time.

---

[1] The trial court also terminated the parental rights of the fathers of the minor children. They have not appealed the trial court's decision, and are not parties to this appeal. Respondent is the mother of two other children who were placed with their fathers; the disposition of those children is not at issue in this appeal.

Respondent pleaded to the allegations in the petition that the house had no electricity, running water, or functioning plumbing, and that medications, rotten food, and dirty diapers were strewn about the home. Respondent admitted that on August 3, 2014, she had left the children alone, spent the day drinking, and hung up on a police officer. Petitioner's representative indicated at the adjudication hearing that the children had been placed in foster homes.

The trial court held a dispositional hearing on October 13, 2014. The trial court was informed that the children were in foster care, and that the older children were receiving counseling. Respondent was scheduled to undergo a substance abuse assessment and a psychological evaluation, was participating in parenting and budgeting classes, and was employed and attending college classes. Respondent had missed three parenting time sessions, and often did not bring necessary items, such as baby supplies, to the sessions. The trial court continued the children in foster care and directed respondent to comply with her treatment plan.

During the period from the adjudication in 2014 to the termination hearing in August of 2016, respondent had 13 different addresses and 3 different telephone numbers. Respondent did not attend counseling and supervised parenting time on a consistent basis. Respondent was dismissed from a parenting class for non-compliance and failed to complete a second parenting class. During parenting time, respondent had difficulty interacting with all of the children at the same time and was not responsive to suggestions about parenting techniques. Respondent missed eight parenting time sessions in July 2015 because she was incarcerated. Respondent was frequently late to parenting time sessions. In February 2016, the trial court granted the children's lawyer-guardian ad litem's (LGAL) motion to suspend respondent's parenting time because she had missed or canceled numerous visits and the missed visits caused the children to act out. Respondent was sporadically employed; at the time of termination she had obtained full-time employment but had only been working for a week.

At the termination hearing, Tania Leachman, respondent's case manager at Saginaw Psychological Services, testified that she worked with respondent from September 2015 until April 2016. Leachman testified that respondent presented herself and acted appropriately, but seemed to gain only minimal benefit from the services offered. Christine Church, a clinical social worker, testified that she was a therapist for KS and JS. When Church started working with JS, he was so impulsive and aggressive that he needed to be restrained at times. He had made progress, but his behavior deteriorated around the times he was scheduled to have a visit with respondent. Church testified that KS acted out violently when she started working with him, but that he had made significant progress.

Lorrie Foor, the foster mother for the children (who ultimately were all placed in the same foster home), testified that the children were doing relatively well in their placement. Foor stated that JS and KS were very aggressive when they came into her care, and that this behavior escalated when they visited with respondent. The children did not ask to see respondent. Foor and her husband were willing to adopt the children.

Britney McInnis, the children's foster care worker, testified that respondent's current housing was not appropriate for the children because respondent's roommate had had her own parental rights terminated. McInnis stated that respondent's parenting time sessions were

chaotic. McInnis stated that the children needed permanency and a sense of stability, and opined that respondent's parental rights should be terminated.

Respondent testified that she had difficulty finding stable employment due to her criminal record, and had difficulty securing housing due to a lack of funds. Respondent stated that she had just obtained a job at a pickle plant. The job paid $11.25 an hour and offered health insurance. Respondent worked afternoons and evenings six to seven days a week. Respondent acknowledged that she did not like to take parenting advice, and preferred her own parenting methods. Respondent testified that she was currently participating in counseling. Respondent denied that she had told her children that they did not have to listen to their foster parents. Respondent stated that she knew of a 24-hour daycare facility where the children could stay while she was working.

Valeria Sheffield, respondent's aunt, testified that she and respondent had a close relationship. Sheffield testified that respondent was a good parent. Sheffield was willing to assist respondent in caring for the children.

The trial court issued a written opinion and order terminating respondent's parental rights. The trial court found that at the time the children were removed from respondent's home, respondent had left the children alone and unsupervised, and that the home was environmentally unsafe. The trial court noted that respondent had been offered numerous services, but that her participation in those services was inconsistent. Respondent often was late for parenting time sessions or missed sessions altogether, and the children acted out and were severely distressed after visits.

The trial court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication still exist and there is no reasonable likelihood the conditions will be rectified within a reasonable time considering the children's ages). The trial court noted that respondent's home was unfit for the children at the time they were removed, and that respondent had had 13 different addresses during the pendency of the case and showed no ability to maintain stable housing. The trial court also terminated respondent's parental rights under MCL 712A.19b(3)(c)(*ii*) (other conditions exist that cause the children to come within the court's jurisdiction). The trial court stated that respondent had failed to engage in or benefit from services, and had not demonstrated an ability or willingness to do so in the future. The trial court also terminated respondent's parental rights under MCL 712A.19b(3)(g) (failure to provide proper care or custody). The trial court found that, respondent lacked parenting skills when the case began and that, although she had been given several opportunities to participate in parenting classes, her attendance was inconsistent and she did not demonstrate that she had benefitted from the classes. She was unable to advance beyond supervised visits. Finally, the trial court terminated respondent's parental rights under MCL 712A.19b(3)(j) (children at risk of harm if returned to parent's home). The trial court noted that respondent was unable to control the children during parenting time sessions, and often ignored the children to concentrate on her phone.

The trial court also found that termination of respondent's parental rights was in the best interests of the children, noting that respondent had mental health issues that were not addressed on a consistent basis, and that she could not maintain stable housing or employment.

Additionally, the children's foster parents provided the children with love, guidance, and the necessities of life, and the children were bonded to their foster parents. The trial court stated that the children deserved stability and permanency.

This appeal followed.

## II. STATUTORY GROUNDS FOR TERMINATION

Respondent argues that the trial court erred by finding that the statutory grounds for termination were established by clear and convincing evidence. We disagree. We review for clear error the trial court's factual findings in order to terminate parental rights. MCR 3.977(K); *In re Rood*, 483 Mich 73, 90; 763 NW2d 587 (2009). " 'A finding is "clearly erroneous" [if] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.' " *Id*. at 91, quoting *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989). We must give due regard "to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

The trial court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j), which permit termination under the following circumstances:

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

(*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The original barrier to respondent regaining custody of her children was the unfit condition of her home. Thereafter, respondent failed to maintain stable housing and employment, failed to engage in counseling on a consistent basis, and missed or was late to numerous parenting time sessions. The evidence showed that respondent no longer lived in the home from which the children were removed. Indeed, respondent had 13 different addresses during the pendency of this case, and the home in which she was living at the time of the termination hearing was inappropriate for the children because respondent's roommate had had her own parental rights terminated. The evidence that respondent had not been able to secure appropriate housing for the children after two years constituted clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*). In addition, respondent's inability to maintain stable employment sufficient to support herself and the children, her failure to engage in counseling on a consistent basis, and her failure to consistently attend parenting time sessions constituted clear and convincing evidence to terminate her parental rights under MCL 712A.19b(3)(c)(*ii*).

Compliance with a treatment plan is evidence of a parent's ability to provide proper care and custody for a child. *In re JK*, 468 Mich 202, 214; 661 NW2d 216 (2003). A parent must not merely receive services, but must benefit from those services so that the trial court can conclude that the parent can provide proper care for the child. *In re Gazella*, 264 Mich App 668, 676-677; 692 NW2d 708 (2005). In this case, the evidence shows that respondent did not benefit from services. She did not attend counseling on a consistent basis. She missed numerous parenting sessions, which caused the children to become upset and act out. In addition, respondent did not have stable housing that was appropriate for the children, and she had not demonstrated that she could maintain employment sufficient to support the children. At the time of the termination hearing, the children had been in foster care for two years, and no evidence showed that respondent would be able to provide proper care and custody for the children within a reasonable time considering their ages. Therefore, clear and convincing evidence supported the termination of respondent's parental rights under MCL 712A.19b(3)(g).

Actual physical abuse need not be established to terminate parental rights under MCL 712A.19b(3)(j). The risk of emotional harm or neglect must be considered as well. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011). The evidence showed that at the time of the termination hearing, respondent had not yet secured appropriate housing for the children, and had obtained full-time employment only one week earlier. The evidence also showed that respondent resisted taking advice regarding parenting techniques, and was unable during parenting time to provide each child with appropriate attention; the parenting time sessions were described as "chaotic." Clear and convincing evidence supported termination of respondent's parental rights under MCL 712A.19b(3)(j).

## IV. BEST-INTEREST DETERMINATION

Respondent also argues that the trial court erred by finding that termination of her parental rights was in the children's best interests. We disagree. We review for clear error the trial court's factual findings in an order to terminate parental rights. See MCR 3.977(K); *In re Rood*, 483 Mich at 90. "[T]he preponderance of the evidence standard applies to the best-interest determination." *In re Moss*, 301 Mich App 76, 83; 836 NW2d 182 (2013).

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). In determining a child's best interests, the trial court may consider the child's need for stability and permanency and whether the child is progressing in his or her current placement. *In re VanDalen*, 293 Mich App 120, 141; 809 NW2d 412 (2011). In addition, the trial court may consider the children's bond to the parent, the parent's parenting ability, and the advantages of a foster home over the parent's home. *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012).

At the time of the termination hearing, the children had been in foster care for two years, and were bonded to their foster parents, who were willing to adopt them. The children did not ask about respondent, and their behaviors worsened both after parenting time and after respondent missed scheduled visits. The evidence showed that respondent lacked stable housing and employment, and had not made consistent efforts to engage in counseling or to exercise parenting time. The children had needs, including continued counseling, that respondent could not meet. The trial court found that the children's needs were being met by their foster parents, and that the children deserved permanence and stability, which respondent could not provide. The trial court did not clearly err by finding that the termination of respondent's parental rights was in the children's best interests. *In re Rood*, 483 Mich at 90.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Joel P. Hoekstra
/s/ Mark T. Boonstra