*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. R. KELLOGG, Minor.

FOR PUBLICATION
January 28, 2020
9:10 a.m.

No. 349930
Ionia Circuit Court
Family Division
LC No. 2019-000099-NA

Before: MARKEY, P.J., and GLEICHER and M. J. KELLY, JJ.

M. J. KELLY, J.

Following a bench trial, the trial court found that there were statutory grounds under MCL 712A.2(b)(1) and (2) to assume jurisdiction over respondent's minor children, DF and JK. In this appeal by right,[1] respondent argues that the trial court clearly erred by finding that there were statutory grounds to exercise jurisdiction over JK. For the reasons stated in this opinion, we vacate the order of adjudication and the subsequent dispositional order and remand for further proceedings.

## I. BASIC FACTS

In March 2019, the Department of Health and Human Services (DHHS) filed a petition seeking the removal of the children from respondent's care and asking the court to take jurisdiction over them. The majority of the petition contained allegations that respondent did not provide DF with proper care and custody. Specifically, the petition alleged that DF was removed from respondent's care in 2008 because she caused him a "mental injury." DF was returned to respondent's care in 2017. In its petition, the DHHS alleged that respondent "aggressively" yelled at DF for breaking her rules and that DF lived in a state of fear and anxiety as a result of her yelling, harsh punishment, and unpredictable and inconsistent punishment based on different behaviors. The petition also included allegations that respondent failed to comply or benefit

---

[1] The order appealed refers to both DF and JK. However, no claim of appeal was filed in DF's case; therefore, we have no jurisdiction over his case and refer to him only as necessary.

from services from previous Child Protective Services (CPS) cases, failed to participate in mental-health treatment, and had difficulty implementing her parenting-skills training. As it related to JK, the petition only asserted that respondent had "been observed by professionals to become verbally aggressive with [JK] and unable to regulate her emotional state when responding to him." Following the preliminary hearing, the court authorized the petition, and the matter was set for an adjudication trial. Subsequently, the court found that there were statutory grounds to take jurisdiction because of respondent's "failure to provide, when able to do so, necessary care for the health or morals of the children" and because respondent's home was "an unfit environment by reason of neglect or depravity on her part." Accordingly, the court entered an order of adjudication assuming jurisdiction of both children.

This appeal follows.

## II. JURISDICTION

### A. STANDARD OF REVIEW

Respondent argues that the trial court clearly erred by finding statutory grounds to take jurisdiction over JK. "To acquire jurisdiction, the factfinder must determine by a preponderance of the evidence that the child comes within the statutory requirements of MCL 712A.2[.]" *In re Brock*, 442 Mich 101, 108-109; 499 NW2d 752 (1993). Challenges to the court's decision to exercise jurisdiction are reviewed "for clear error in light of the court's finding of fact." *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. at 296-297.

### B. ANALYSIS

In this case, the trial court assumed jurisdiction over the minor children under MCL 712A.2(b)(1) and (2), which provide:

> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. . . .

> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in.

The fact that there are statutory grounds to assume jurisdiction over one minor child does not automatically mean that there are statutory grounds to assume jurisdiction over a second minor child. See *In re Churchill/Belinski*, 503 Mich 895 (2018) (vacating the trial court's order of

adjudication and dispositional order over two of the respondent-mother's children because "[t]here is no independent basis to conclude that SLB or JWC come within the statutory requirements of MCL 712A.2(b)").[2]

In this case, as it relates to MCL 712A.2(b)(1), the court found that respondent, when able to do so, neglected to provide care necessary for the children's health or morals. And as it pertains to MCL 712A.2(b)(2), the court found that respondent's neglect and depravity rendered the children's home an unfit place for them to live. However, on the record before this Court, there is no independent basis to support the court's findings as they relate to JK.

Petitioner argued and presented evidence that the court should assume jurisdiction over JK because of concerns with respondent's overall mental health and because respondent was yelling and swearing at JK, was neglecting JK's educational needs, had failed to provide JK with consistent rules and with a routine and structure, and had some difficulty managing JK's wants and controlling him. We address the evidentiary support for each allegation in turn.

With regard to respondent's overall mental health, the caseworker referenced a 2008 psychological evaluation where respondent was apparently diagnosed with borderline personality disorder.[3] Yet, it is undisputed that respondent submitted to a psychological evaluation in 2017. That evaluation, which was admitted into evidence, was conducted by Dr. Thomas Spahn, a licensed psychologist. In the summary and conclusion section of his report, Dr. Spahn opined:

> The psychological is essentially normative. There are no serious cautions such as deficient problem-solving skills, serious psychopathology, highly problematic personally pattern, or an authoritarian personality style that would raise cautions.

Further, although there was testimony that respondent was being treated for anxiety and had some depression, there was no testimony explaining how those conditions affected her fitness as a parent to JK, nor was there any testimony regarding the severity of the conditions. Regarding respondent's mental-health, there is also evidence that respondent admitted to Dr. Spahn that she had difficulty managing stress, and the testimony from the caseworker and other service providers corroborated her statement. The caseworker testified that an example of this was when JK had a meltdown and respondent took her phone away from him. The caseworker stated that in response to the stress of the situation, respondent returned the phone to him, which the caseworker appeared to believe showed respondent was unable to handle the stress of parenting JK. In light of all the evidence relating to respondent's mental health, we conclude that respondent has difficulty with stress, that over 10 years ago she had a negative diagnosis on a psychological assessment, and that she currently has some anxiety and depression. The testimony does not, however, rise to the level of establishing that respondent is unfit to parent

---

[2] Orders from our Supreme Court are binding if they are a final disposition of an application containing a concise statement of the applicable facts and the reason for the decision. See *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 369; 817 NW2d 504 (2012).

[3] The 2008 psychological evaluation was not admitted into evidence.

JK, especially in light of the caseworker's testimony it was "unknown" how removal of DF—a significant source of stress in the home—would affect respondent's parenting of JK.

The caseworker also suggested it was proper for the court to assume jurisdiction over JK because respondent was verbally aggressive with him. At trial, several witnesses testified that respondent was verbally aggressive with JK, and they recounted that she was loud and would yell and swear at him. On one occasion, JK flinched when she was yelling at him. There was also testimony that while yelling, respondent would have an intimidating presence because she would stand over JK or invade his personal space. There were no allegations of physical violence, and beyond the testimony that he flinched on one occasion, there was no indication that JK was negatively affected by respondent's yelling and swearing. A parent that yells and swears at his or her child, stands over them, and invades their personal space, can fairly be characterized as a less than ideal parent. But that fact standing alone does not prove a parent's unfitness under MCL 712A.2(b) because it is insufficient to show that there is "a substantial risk of harm to [the child's] mental well-being." Nor does it establish that the child's home environment is an unfit place because of the parent's neglect, cruelty, drunkenness, criminality, or depravity so as to allow the court to assume jurisdiction under MCL 712A.2(b)(2). Something more than yelling and swearing is necessary to prove parental unfitness.

The caseworker also suggests that the court could take jurisdiction over JK because respondent was neglecting his educational needs. Notwithstanding the fact that JK was only three years old at the time, the record reflects that he had an individualized educational plan (IEP) to address a speech delay. Respondent did not consistently take him to his "school." But nothing on the record supports an inference that respondent was required by law or court order to take him to school. Furthermore, the trial court found that this failure did not rise to the level of educational neglect under MCL 712A.2(b). Accordingly, on this record, there is no indication that JK's "truancy" was a basis to find respondent an unfit parent.

There was also testimony from one of the service providers that respondent's pattern of inconsistent rules and lack of routine or structure was detrimental to both children. The testimony, however, focused primarily on DF, who had a special need for structure and routine because of his history of trauma, behavioral issues, and mental-health diagnosis. As it relates to JK, the testimony was only that, generally, it is better for a child to have a consistent set of rules and to have a routine and structure to his or her life. Wholly missing from the record is any testimony indicating that the lack of structure and routine and the inconsistent application of rules was actually having a negative impact on JK's health or mental-wellbeing or that it was creating an unfit home environment for him under MCL 712A.2(b)(2).

Finally, another witness testified that she observed respondent had some difficulties managing JK's wants and controlling him. The witness recounted that on occasions respondent would be loud and verbally aggressive and that on one occasion she "plopped" JK onto her lap somewhat aggressively. Parents, however, are allowed to have some difficulties managing the wants of and controlling their children. MCL 712A.19b(2)(1) and (2) require more than "some difficulty," and in this case nothing more has not been offered.

In conclusion, although the court found that respondent neglected to provide necessary care for JK's health and morals, we can discern no independent factual basis for that finding. Accordingly, we conclude that the trial court clearly erred by finding grounds for jurisdiction under MCL 712A.2(b)(1). Further, we cannot find evidentiary support for the court's finding that respondent's "neglect" or "depravity" deprived JK of a fit home environment. Although there is certainly evidence enough to support that respondent has not been a model parent, "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents . . . ." *Santosky v Kramer*, 455 US 745, 753; 102 SCt 1388; 71 L Ed 2d 599 (1982); see also *In re Newman*, 189 Mich App 61, 70; 472 NW2d 38 (1991) (determining that although the respondent-parents were "less than ideal," there was insufficient evidence to terminate their parental rights).

Our inquiry, however, cannot end with a determination that there is not an individual factual basis for the court to assume jurisdiction over JK under MCL 712A.2(b). In cases with multiple children, the doctrine of anticipatory neglect may apply to confer jurisdiction. *In re BZ*, 264 Mich App at 296. "The doctrine of anticipatory neglect recognizes that [h]ow a parent treats one child is certainly *probative* of how that parent may treat other children." *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001) (quotation marks and citation omitted; emphasis added). "Abuse or neglect of the second child is not a prerequisite for jurisdiction of that child and application of the doctrine of anticipatory neglect." *In re Gazella*, 264 Mich App 668, 680-681; 692 NW2d 708 (2005), superseded in part on other grounds *In re Hansen*, 285 Mich App 158, 163; 774 NW2d 698 (2009).

Here, respondent does not challenge that the court properly assumed jurisdiction over DF. Moreover, although the trial court did not directly reference the doctrine of anticipatory neglect in its findings, the petitioner argued to the trial court that jurisdiction over JK was proper on this basis. Yet, even though jurisdiction may be properly assumed on the basis of the anticipatory neglect doctrine, that does not also mean that it will always be sufficient. See *In re LaFrance minors*, 306 Mich App 713; 858 NW2d 143 (2014).

In *LaFrance*, this Court held that the doctrine of anticipatory neglect allows an inference that a parent's treatment of one child is probative of how that parent may treat other children. *Id*. at 730. However, the probative value of such an inference is decreased by differences between the children, such as age and medical conditions. *Id*. at 730-731. In *LaFrance*, the respondent parents had neglected their youngest child, but there was no evidence that they had ever abused or neglected their three older children. *Id*. at 726-730. The trial court nevertheless found grounds to terminate the respondents' parental rights to all the children, relying heavily on the parents' failure to address their substance-abuse issues. *Id*. at 730. This Court reversed, finding that the court's reliance on the parents' failure to control their substance-abuse issues and on the doctrine of anticipatory neglect was insufficient to warrant termination when considered alongside the fact (1) that the older children, whose ages ranged from five to twelve, had different needs than the infant that was neglected; and (2) that, unlike their infant sibling, the older children did not require special care for cerebral palsy. *Id*. at 730-731.

Similarly, in this case, there are marked and significant differences between DF and JK that severely decrease the probative value of the anticipatory neglect doctrine. At the time of the adjudication trial, DF was 12 years' old and had not been in respondent's care between 2008 and

2017. JK was 3 years' old and had always been in respondent's care. JK had no history of trauma or behavioral issues. In contrast, DF had a long-history of trauma. He was removed from respondent's care because of a "mental injury," and he was placed with his father from 2008 until 2017. While with his father, he was subject to additional trauma. The exact nature of the additional trauma was undefined, but the caseworker indicated that there were allegations of physical and sexual abuse. Further, it was uncontroverted that DF had behavioral issues while in his father's care and that those issues continued in his mother's care. Because of his history of trauma and behavioral issues, DF had needs markedly different from JK's needs. In addition, DF was diagnosed with attention deficient disorder, oppositional defiance disorder, and post traumatic stress disorder. JK was not diagnosed with any mental-health disorders. Thus, DF required counseling; JK did not. Finally, and somewhat significantly, the caseworker testified expressly and repeatedly, that respondent did not treat the children the same. Instead, she showed "clear favoritism" toward JK. There was also testimony that she would provide validation to JK, was physically close to him, and generally had a significantly better bond with him than she had with DF. Given the substantial differences between the two children, we conclude that the doctrine of anticipatory neglect is not sufficient to establish statutory grounds for jurisdiction in this case.[4]

We vacate the order of adjudication and the order of disposition as they relate to JK, and remand for further proceedings. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Jane E. Markey
/s/ Elizabeth L. Gleicher

---

[4] Given our resolution, we decline to address whether the trial court erred by permitting the caseworker to testify to statements made in the 2008 CPS report and 2008 psychological evaluation.