*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* JOHNSON/THOMAS/FOFANA, Minors.

UNPUBLISHED
October 22, 2024
10:19 AM

No. 368134
Genesee Circuit Court
Family Division
LC No. 13-129893-NA

Before: YATES, P.J., and CAVANAGH and MARIANI, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order removing her six minor children, MJ, AGT, ALT, AMT, BF, and SF, from her custody. We affirm.

## I. FACTUAL BACKGROUND

On September 19, 2023, a family court referee issued an ex parte order immediately removing the children from respondent's custody and taking them into protective custody under the supervision of petitioner, the Department of Health and Human Services (DHHS). The referee explained in the order that, pursuant to MCL 712A.2(b) and MCR 3.963(B), it was contrary to the children's welfare to continue residing in respondent's home because of concerns involving an unsafe home environment, the apparent physical abuse and recent death of a two-year-old child under respondent's long-term care at that time,[1] and respondent's refusal to cooperate with DHHS to verify and ensure her children's welfare and safety immediately following the two-year-old child's death. The referee found that, in light of this, remaining in respondent's custody presented a substantial risk of harm to the children and that immediate removal from respondent's custody was necessary to protect the children's health and safety. The referee also found that reasonable efforts had been made to prevent removal and that no remedy other than protective custody was reasonably available to keep the children safe, specifying that Children's Protective Services (CPS)

---

[1] The two-year-old child was not respondent's biological child and was not related to the six minor children at issue in this appeal.

"spoke with the medical examiner and other medical staff, spoke with law enforcement, attempted to safety plan the children, attempted a welfare check on the children, spoke with the deceased child's mother and others . . . [, and] reviewed photos of the deceased child."

The trial court conducted a preliminary hearing later that day, during which the court reiterated that the referee removed the children from respondent's custody on an emergency basis after reviewing "an emergency overnight petition" submitted by DHHS and expressly making "contrary to welfare [and] reasonable efforts findings" in the removal order. The trial court did not authorize the petition at that time and ultimately adjourned the preliminary hearing for further investigation after respondent suggested that the children might have Native American heritage,[2] but it entered an order reaffirming all of the referee's factual findings in the removal order and continuing the children's placements outside of respondent's custody. This appeal followed.

## II. EX PARTE REMOVAL ORDER

Respondent argues that the trial court erred by removing the children from her care and placing them into protective custody because the referee failed to make the requisite factual findings to support removal. Relatedly, respondent argues that the factual findings made in the ex parte removal order lacked a sufficient factual basis. We disagree.

### A. STANDARD OF REVIEW

"We review the interpretation and application of statutes and court rules de novo." *In re Ferranti*, 504 Mich 1, 14; 934 NW2d 610 (2019). We review a trial court's factual findings for clear error, and a finding is clearly erroneous when we are "left with a firm and definite conviction that a mistake has been made." *In re Williams*, 333 Mich App 172, 178; 958 NW2d 629 (2020) (quotation marks and citation omitted). "Further, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

### B. ANALYSIS

MCR 3.963(B) governs the emergency removal of children and provides, in relevant part:

(1) Order to Take Child into Protective Custody. The court may issue a written order . . . to immediately take a child into protective custody when, after presentment of a petition or affidavit of facts to the court, the court has reasonable cause to believe that all the following conditions exist, together with specific findings of fact:

---

[2] Neither party raises any issues pertaining to Native American heritage in their briefs on appeal.

(a) The child is at substantial risk of harm or is in surroundings that present an imminent risk of harm and the child's immediate removal from those surroundings is necessary to protect the child's health and safety. . . .

(b) The circumstances warrant issuing an order pending a hearing in accordance with:

(*i*) MCR 3.965 for a child who is not yet under the jurisdiction of the court . . . .

* * *

(c) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.

(d) No remedy other than protective custody is reasonably available to protect the child.

(e) Continuing to reside in the home is contrary to the child's welfare. [See also MCL 712A.14b(1) (containing substantially similar language).]

MCR 3.965(C) sets forth requirements for pretrial placement of a child, which include, in relevant part, "[c]ontrary to the welfare findings," MCR 3.965(C)(3), "[r]easonable efforts findings," MCR 3.965(C)(4), and the following criteria:

The court may order placement of the child into foster case if the court finds all of the following:

(a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.

(b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from the risk as described in subrule (a).

(c) Continuing the child's residence in the home is contrary to the child's welfare.

(d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.

(e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare. [MCR 3.965(C)(2); see also MCL 712A.13a(9) (containing the same language).]

A referee "may issue an interim placement order pending a preliminary hearing" if he or she "finds all the factors in [MCR 3.963(B)(1)] are present," but the order must "contain specific findings of fact." MCR 3.963(B)(4). See also MCL 712A.14a(3) (authorizing a referee to issue

-3-

an emergency removal and placement order when "the court is closed" at the time of the request and providing that "the order shall take effect as an interim order pending a preliminary hearing").

"MCR 3.965(C)(2) and MCL 712A.13a(9) explicitly require that the trial court find *all* the factors prior to removing a child from a parent's care." *Williams*, 333 Mich App at 184. "A trial court is generally not obligated to articulate extensive findings regarding every conceivable detail," but it "must make a record of its findings as to each and every factor sufficient for this Court to conduct a meaningful review." *Id*. at 183. The court must also "make explicit findings that it is contrary to the welfare of the child to remain at home, MCR 3.965(C)(3), and reasonable efforts to prevent the removal of the child have been made or that reasonable efforts to prevent removal are not required, MCR 3.965(C)(4)." *In re Benavides*, 334 Mich App 162, 168; 964 NW2d 108 (2020) (quotation marks omitted). "The preponderance of the evidence standard applies to cases where the court is merely assuming jurisdiction over the child and not terminating the parent's rights in that child." *Williams*, 333 Mich App at 183 (quotation marks and citation omitted).

The referee—and, by extension, the trial court—in this case made all of the required findings under MCR 3.963(B) in its ex parte order removing the children from respondent's care and taking them into protective custody.[3] In the order, the referee found that the children were at a substantial risk of harm or were in surroundings that presented an imminent risk of harm; that immediate removal was necessary to protect their health and safety; that continuing to reside in respondent's home was contrary to their welfare; that no other remedy was reasonably available to protect them; and that reasonable efforts were made to prevent or eliminate the need for removal. See MCR 3.963(B)(1); see also MCR 3.965(C)(2)-(4). The order also specifically stated that a two-year-old child had inexplicably died while in respondent's care; the deceased child "had bruises and bite marks from head to toe"; CPS immediately conducted an investigation into the child's death and, after reviewing photos of the deceased child and speaking to the medical examiner, medical staff, and law enforcement, attempted "a welfare check on the children" and to establish a safety plan for the children; and respondent repeatedly refused to cooperate with DHHS's efforts to ensure the children's welfare and safety immediately following the child's death. The trial court reaffirmed all of the referee's written findings both on the record and in its order following the preliminary hearing, and it similarly found that removal was necessary based on these findings. Thus, the trial court made explicit factual findings to support its findings under the court rules, including as to its contrary-to-the-welfare and reasonable-efforts findings, as it was required to do. See *Benavides*, 334 Mich App at 168; *Williams*, 333 Mich App at 184.

There was also a sufficient factual basis for all of these findings. As noted, the referee referenced many facts specific to this case to support its findings, all of which the trial court adopted in its order following the preliminary hearing. MCR 3.963(B)(1) permits a trial court to issue an order to immediately take a child into protective custody after presentment of a petition or affidavit of facts, and all of the facts provided in the order were directly supported by facts alleged in DHHS's petition. The petition indicated that medical staff who treated and later

---

[3] As previously indicated, the referee's ex parte removal order acted as an interim one until the trial court held a preliminary hearing, after which the court issued an order reaffirming the referee's findings and continuing the children's removal. See MCR 3.963(B)(4); MCL 712A.14a(3).

examined the deceased child expressed concerns to CPS investigators that the child's injuries and death were the result of nonaccidental trauma. The petition also indicated that respondent refused to answer any questions about the child's injuries and death, refused to disclose her children's location so that DHHS could verify their welfare and safety, repeatedly refused to allow her children to be medically examined or forensically interviewed, and refused to agree to any temporary living arrangements or safety plans that DHHS deemed appropriate. The petition further indicated that respondent had an extensive history with CPS, much of which related to physical abuse, neglect, and improper supervision, and that approximately six months prior to the two-year-old's death, respondent's 16-year-old daughter had also died while in respondent's custody, and an investigation into her death was still ongoing. In light of the facts at the time the ex parte order was issued, we see no inadequacy or clear error in the order's underlying findings. See *Williams*, 333 Mich App at 178.[4]

Affirmed.

/s/ Christopher P. Yates
/s/ Mark J. Cavanagh
/s/ Philip P. Mariani

---

[4] In challenging the factual basis of the trial court's findings, respondent also argues that the doctrine of anticipatory neglect, which "recognizes that how a parent treats one child is certainly probative of how that parent may treat other children," *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020) (quotation marks, citation, alteration, and emphasis omitted), did not apply in her case because her children were not similarly situated to the two-year-old who died while in her care, see *id.* at 259 (stating that "the probative value of [an anticipatory-neglect] inference is decreased by differences between the children, such as age and medical conditions"). In support, respondent claims that there was no evidence at the time of the removal that the other children were harmed or subject to neglect, improper supervision, or an inadequate home environment. Respondent, however, overlooks the inadequacies in the home environment discovered during the investigation immediately following the two-year-old's death, as well as the fact that she would not allow DHHS to confirm the welfare and safety of the children. Given the facts alleged in the petition and the fact that two children had died within a six-month period while in respondent's care, DHHS and the trial court were not required to wait until the abuse or neglect of another child to remove the children from respondent's care. See *In re Gazella*, 264 Mich App 668, 680-681; 692 NW2d 708 (2005), superseded by statute in part on other grounds by MCL 712A.19b(5) ("Abuse or neglect of the second child is not a prerequisite for jurisdiction of that child and application of the doctrine of anticipatory neglect.").