# STATE OF MICHIGAN

# COURT OF APPEALS

In re GARCIA-JIMENEZ, Minors.

UNPUBLISHED
June 14, 2018

No. 340669
Kent Circuit Court
Family Division
LC Nos. 15-051439-NA;
15-051440-NA

Before: MURRAY, C.J., and MARKEY and TUKEL, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order terminating her parental rights to the minor children under MCL 712A.19b(3)(c)(*i*). We affirm.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). This Court reviews for clear error a trial court's factual determination that statutory grounds exist for termination. *Id*.; MCR 3.977(K). "Appellate courts are obliged to defer to a trial court's factual findings at termination proceedings if those findings do not constitute clear error." *In re Rood*, 483 Mich 73, 90; 763 NW2d 587 (2009). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

The trial court terminated mother's parental rights to the minor children pursuant to MCL 712A.19b(3)(c)(*i*), which states in relevant part as follows:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

-1-

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

Mother argues that the trial court erred in finding statutory grounds for termination of her parental rights. We disagree.

The trial court determined that 182 or more days had elapsed since the issuance of an initial dispositional order, that the conditions that led to the adjudication continued to exist, and that there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering the children's ages. There is no dispute in this case that 182 or more days elapsed since the issuance of the initial dispositional order. In addition, there is no dispute that the conditions that led to the adjudication continued to exist when the trial court terminated mother's parental rights. The only dispute is whether the trial court committed clear error in finding that there was no reasonable likelihood that the conditions that led to the adjudication would be rectified within a reasonable time considering the children's ages. Based on our review of the record, we cannot conclude that the trial court clearly erred in finding by clear and convincing evidence that there was no reasonable likelihood that the conditions that led to the adjudication would be rectified within a reasonable time considering the children's ages.

Mother argues that she made progress in improving her parenting skills while the children were in foster care and that she just needed more time to continue developing those parenting skills. Mother, however, received services and trial court supervision for two years. The DHHS offered mother numerous services, and she both participated in and completed the services offered to her. Yet the caseworkers repeatedly testified that mother did not benefit from those services because she did not put into practice the lessons she ostensibly learned through those services. A parent must benefit from the services offered so that he or she can improve parenting skills to the point where the children would no longer be at risk in the parent's custody. As in the case of *In re Gazella*, 264 Mich App 668, 677; 692 NW2d 708 (2005), while "respondent substantially complied with the case service plan in that she physically did what was asked of her, she did not sufficiently benefit from the services offered to enable the court to find that she could provide a home for her children in which they would no longer be at risk of harm."

We note that this appeal involves the termination of mother's parental rights to only two of her children. At the beginning of this case, mother was attempting to provide care and supervision for six children, all of whom were special needs children in some respect. During the pendency of the case, mother gave birth to two additional children. The trial court terminated mother's parental rights to the two children who had the most significant special needs. It did so in part because mother demonstrated an inability to provide those children with the individualized attention that their medical conditions demanded while simultaneously taking care of all of their siblings, most of whom also had special needs. In addition, over the course of this case, CPS substantiated multiple complaints that mother physically abused the children and that she failed to provide proper supervision. Even after two years of services, mother demonstrated an unwillingness to comply with the safety plan that was developed because one child engaged in inappropriate sexual contact with younger siblings. The record supports the trial court's conclusion that mother's failure to follow the safety plan placed the children in danger.

Furthermore, the record supports the trial court's conclusion that mother repeatedly lied to caseworkers about a variety of things, including her failure to follow the safety plan.

Mother argues that the DHHS did not adequately take her limited cognitive abilities into account and did not provide her enough time and services to rectify the conditions that led to the adjudication of the children. We disagree. The trial court continued the children in foster care for two years while the DHHS offered mother repeated services to assist her in improving her ability to safely parent her children. However, the trial court found that during that time, mother continued to violate the safety plan and repeatedly lied to caseworkers about her violations of the safety plan. The trial court did not clearly err in finding that the DHHS had provided adequate services to mother and that, given the children's ages, mother was unable to rectify the conditions that led to adjudication within a reasonable time. Therefore, we affirm the trial court's finding that a statutory ground for termination of mother's parental rights to the children existed, pursuant to MCL 712A.19b(3)(c)(*i*).[1]

Once a statutory ground for termination of parental rights has been established, the trial court must order the termination of parental rights if it finds by a preponderance of the evidence "that termination of parental rights is in the child's best interests." MCL 712A.19b(5); *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). In this context, we note that "the interests of the child and the parent diverge once the petitioner proves parental unfitness." *Id*. at 87. Therefore, the interests of the child, not the parent, are the focus of the best interest stage of child protective proceedings. *Id*. at 87-88.

> The trial court should weigh all the evidence available to determine the children's best interests. To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014) (quotation marks and citations omitted).]

---

[1] Although mother also argues that the trial court erred in terminating mother's parental rights to the children pursuant to MCL 712A.19b(3)(g), we note the trial court did not rely on that statutory ground to terminate mother's parental rights to these children. In any event, because we conclude that the trial court did not clearly err in finding that termination of mother's parental rights was proper under MCL 712A.19b(3)(c)(*i*), we need not address termination of mother's parental rights to the children pursuant to any other statutory ground. See *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (1999) (stating that if this Court concludes that the trial court did not clearly err in finding one statutory ground for termination, this Court need not address the additional grounds for termination.)

This Court reviews for clear error the trial court's ultimate determination that termination of parental rights is in the best interests of the child. *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000).

In this case, the trial court found that the following factors weighed in favor of terminating mother's parental rights: (1) the DHHS had been unable to find any possible guardians for the two children; (2) mother's history of substantiated CPS complaints regarding physical abuse of the children; (3) mother's psychological history suggested that she had limitations to fully grasp the children's needs; (4) the ages of the children; (5) the weakness of the bond between mother and the two children; (6) the fact that the two children had blossomed while in foster care, making significant progress that they had not made while in mother's care; (7) the children's need for permanence, stability, and finality; (8) the length of time the children may need to wait for mother to rectify the conditions that brought the children into the court's care; and (9) the possibility of adoption for one of the children in his foster home. The trial court found that the following factors weighed against terminating mother's parental rights: (1) mother's visitation history and (2) mother's compliance with services offered to her. The trial court found that the following factors were neutral: (1) the children were not in the care of relatives; (2) there was no evidence of continued involvement in domestic violence incidents; and (3) while there was no identified adoptive home for one of the children, his foster parents agreed to continue providing care while adoption was explored. In considering all these factors, the trial court found that the preponderance of the evidence supported that termination of mother's parental rights was in the best interests of the two children.

Mother argues that she made great strides in improving her parenting skills while the children were in foster care and that she had a bond with the two children. We cannot conclude that the trial court committed clear error in determining that termination of mother's parental rights was in the children's best interests. Both children thrived in foster care in ways they did not while in mother's care. In addition, throughout the course of this case, mother demonstrated a lack of understanding of the children's disabilities and an inability to provide them with the care they needed. For example, mother told the other children not to speak to one of the children because his disability rendered him unable to speak. Yet, the child's foster parents successfully taught him how to speak some words and began teaching him sign language. The trial court also found that mother treated the other child differently from his siblings and targeted him for negative treatment because he disclosed the physical abuse that occurred in the home. Finally, the trial court found that mother struggled to provide the two children the individualized attention that their medical conditions required because she was simultaneously trying to provide care and supervision to a number of other special needs children. Given all of the record evidence, we conclude that the trial court did not clearly err in finding that termination of mother's parental rights was in the children's best interests. MCR 3.977(K).

We affirm.

/s/ Christopher M. Murray
/s/ Jane E. Markey
/s/ Jonathan Tukel