# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* M. WILCZYNSKI, Minor.

UNPUBLISHED
August 23, 2018

No. 340718
Livingston Circuit Court
Family Division
LC No. 2015-015160-NA

Before: MURPHY, P.J., and GLEICHER and LETICA, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating his parental rights to the minor child pursuant to MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood child will be harmed if returned to parent's home). We affirm.

According to the removal petition, respondent assaulted the child's mother, with whom he was living, in the early hours of November 25, 2015. Respondent did not want the child to sleep in the couple's bed, so the mother went to sleep with the child on the couch. This upset respondent, who had been drinking. The mother woke up to respondent "hitting her in the face repeatedly" while the child was in her arms. Respondent then held a gun to the mother's head and stated, "I didn't want to do this." The mother ran out of the home and later returned with her parents to retrieve the child. They observed "gun casings" on the floor and holes in the walls. The mother sought treatment at a hospital. On December 7, 2015, criminal charges were brought against respondent arising out of the assault.

In January 2016, respondent pleaded guilty to domestic violence and felony discharge of a firearm in a building. He remained incarcerated in jail until he was released on probation in August 2016. In March 2016, respondent pleaded no contest in the child protective proceedings to an amended petition. The case service plan required respondent to complete psychological and substance abuse evaluations and follow the corresponding recommendations, participate in random drugs screens, obtain employment and housing, complete parenting classes, participate in parenting visits, and to complete a "DAIP" (Domestic Assailant Intervention Program) course.

When he was released from jail in August 2016, respondent completed the psychological evaluation and the substance abuse assessment. In both evaluations, respondent denied that he had committed domestic violence against the mother. The psychologist was concerned with respondent's defensiveness and his concept of parenting. The psychologist recommended

-1-

counseling and parenting classes for respondent. The social worker performing the substance abuse assessment found that respondent "may have minimized his alcohol use." She recommended that respondent participate in outpatient treatment and in weekly support groups.

As of the December 2016 review hearing, respondent had made little progress in complying with and benefitting from the case service plan. While respondent's drug and alcohol screens were negative, he was consistently tardy for his weekly two-hour supervised parenting visits. He was participating in a domestic violence group, but he continued to deny the need for treatment and requested that he be excused from the group because he had purportedly never committed an abusive act. The hearing referee admonished respondent for blaming others and not taking responsibility for his actions.

As of the March 2017 permanency planning hearing, respondent had begun participating in a different DAIP program. He had not started parenting classes or counseling and was not interested in doing so. Respondent continued to arrive late for most of his parenting visits and missed one visit completely "due to his alarm not waking him up." Based on the referee's recommendation, petitioner filed a supplemental petition requesting termination of respondent's parental rights.

The four-day termination hearing began in June 2017. Respondent's behavior on the night leading to these proceedings was an area of focus. Initially, respondent denied that the domestic violence incident occurred. Later, respondent testified that he wanted to take responsibility for the allegations to which he had pleaded guilty and no contest in the respective proceedings. However, respondent maintained that he did not remember what occurred that night because he was sleeping. Ultimately, respondent stated, "I truly don't believe that it happened."

Respondent's compliance with the case service plan and his benefit from services were also explored at the termination hearing. Respondent believed that he was benefitting from his current domestic violence program. But the latest progress report indicated that respondent often made comments "oppositional to the goal of making safe and respectful choices"; respondent explained that he likes to "play devil's advocate." Respondent continued to deny any abusive behavior. Respondent's girlfriend testified that the two had been together for nearly a year and that there were no instances of domestic violence.

Respondent denied through most of the termination hearing that he had a substance abuse problem. On the third day of the hearing, he admitted that there had been a substance abuse problem with alcohol in the past, but he believed that the issue was resolved. Respondent also admitted that he did not tell the substance abuse evaluator about the time he was arrested in March 2015 for disorderly conduct while intoxicated. Respondent had started receiving counseling at Catholic Charities in April 2017. He agreed that he initially did not want to attend counseling but found that he was benefitting from it. When asked if he had spoken to his counselor about assaulting the mother, respondent answered, "I talked to her about the allegations, correct." Respondent asserted that he took parenting classes while incarcerated in jail. Two of respondent's family members and his girlfriend testified positively regarding his parenting skills. The caseworker testified to the parenting issues that arose during respondent's visitations. Respondent had obtained employment and appropriate housing, and his drug and

alcohol screens were negative. The hearing concluded in early August 2017. In late September 2017, the hearing referee issued her findings of fact and recommended termination of respondent's parental rights. The trial court adopted the referee's recommendations.

On appeal, respondent argues that the trial court clearly erred in finding that the statutory grounds for termination were proven by clear and convincing evidence and that the court also clearly erred in finding that termination was in the child's best interests. We disagree.

If a trial court finds that a single statutory ground for termination has been established by clear and convincing evidence and that it has been proved by a preponderance of the evidence that termination of parental rights is in the best interests of a child, the court is mandated to terminate a respondent's parental rights to that child. MCL 712A.19b(3) and (5); *In re Beck*, 488 Mich 6, 10-11; 793 NW2d 562 (2010); *In re Moss,* 301 Mich App 76, 90; 836 NW2d 182 (2013); *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). "This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011); see also MCR 3.977(K). "A finding . . . is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed[.]" *In re BZ*, 264 Mich App 286, 296; 690 NW2d 505 (2004). In applying the clear error standard in parental termination cases, "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989). The trial court must "state on the record or in writing its findings of fact and conclusions of law[,] [and] [b]rief, definite, and pertinent findings and conclusions on contested matters are sufficient." MCR 3.977(I)(1).

The trial court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j), which at the time of the termination hearing provided as follows:[1]

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

> \* \* \*

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

---

[1] MCL 712A.19b(3)(g) has since been substantively amended. 2018 PA 58, effective June 12, 2018.

\* \* \*

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

"Generally, when a child is removed from the parent's custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re HRC*, 286 Mich App 444, 462; 781 NW2d 105 (2009). "Not only must respondent cooperate and participate in the services, [he] must benefit from them." *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014).

With respect to MCL 712A.19b(3)(c)(*i*), respondent argues that the domestic violence condition no longer existed because his current girlfriend testified that they had been in a relationship for a year without respondent demonstrating violent behavior. We disagree with respondent that this evidence was dispositive. The domestic violence incident leading to this case was obviously very serious, and it could not be rectified simply by not committing an act of domestic violence in a new relationship. Rather, respondent needed to acknowledge his problem and address it by meaningfully engaging in services. He did neither. Although he pleaded no contest to the removal petition and pleaded guilty to the related criminal charges, he consistently denied committing domestic violence against the mother. Respondent's denials of ever engaging in abusive activity left him unable to *benefit* from the domestic violence services in which he participated. *In re Gazella*, 264 Mich App 668, 676; 692 NW2d 708 (2005) (explaining that merely attending services "is not enough"; the parent must also benefit from services). Indeed, respondent's failure to benefit from services was established by his progress reports from the domestic violence programs, as well as his testimony at the termination hearing. Tellingly, when asked why domestic violence would not be in his life moving forward, respondent answered, "I mean there's no one in my life that would cause something like that. I mean that would—it would never get abrasive like that." In other words, respondent believed that the mother was the cause of him punching the mother in the face and putting a gun to her head. The trial court did not clearly err in finding that respondent failed to rectify his domestic violence issue when respondent made no effort to address the underlying causes of his behavior. Given respondent's consistent refusal to address this condition, the trial court did not clearly err in finding that it was unlikely respondent could rectify the condition in a reasonable time.

Respondent also contends that he rectified his substance abuse issue because his drug and alcohol screens tested negative. Although respondent should be commended for achieving a period of sobriety, the referee did not clearly err in finding that respondent failed to rectify this condition. Respondent consistently denied that he had a drinking problem that needed to be addressed. But he later admitted that he used to have a drinking problem and that he had not

been completely honest with the psychologist and substance abuse evaluator regarding his alcohol use. Respondent's failure to participate in the services recommended in the substance abuse assessment cast significant doubt on his ability to maintain sobriety once he completes probation and is no longer at risk of incarceration for drinking. Outpatient therapy was recommended so that respondent could identify the underlying cause of his excessive drinking. The support groups were recommended so that respondent would have a peer support group to help him maintain sobriety. Respondent declined to follow the recommendations, despite agreeing to do so.

In sum, there was ample evidence that respondent failed to acknowledge and address the conditions leading to adjudication through services. Accordingly, we are simply not left with a definite and firm conviction that the trial court erred in finding clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*).

Additionally, given the evidence that respondent struck the mother in the face while she held the child, pointed a gun at the mother's head, threatening her, and fired the gun in the home with the child present, all while intoxicated, and considering that he failed to benefit from the case service plan, not honestly acknowledging his drinking problem and the domestic violence incident, we cannot conclude that the trial court clearly erred in finding that MCL 712A.19b(3)(g) and (j) were proven by clear and convincing evidence.

Respondent next argues that the trial court clearly erred in finding that termination was in the child's best interests. We disagree. With respect to a child's best interests, we place our focus on the child rather than the parent. *In re Moss*, 301 Mich App at 87. In assessing a child's best interests, a trial court may consider such factors as a "child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014).

In arguing that termination was not in the child's best interests, respondent focuses on the parental bond with the child. It was undisputed that respondent had a strong parental bond with the child before these proceedings began. But the trial court found that the bond had weakened, and there was substantial evidence supporting that finding. Respondent himself acknowledged the deterioration of the bond, testifying at the termination hearing that he and the child "used to be extremely close." Moreover, respondent did not have visitation with the child while he was incarcerated from January to early August 2016. From there on, he received a weekly supervised parenting visit for two hours; he was routinely late. A court order was also entered to preclude respondent from using electronic devices during the visits.

Along those lines, the trial court also found that respondent's lack of parenting skills supported a finding that termination was in the child's best interests. While respondent's family members and girlfriend testified positively regarding his parenting skills, the caseworker testified to issues that arose during the parenting visits. For instance, respondent did not bring diapers to one of the visits. Respondent was also heard asking the child leading questions regarding

possible bruises and marks on the child. Finally, the court found that respondent was incapable of providing the child with permanency and stability. The trial court determined that respondent's failure to address the underlying causes of the domestic violence incident placed the child at risk of harm. Further, there were numerous examples of respondent's behavior during the proceedings that evinced instability. Giving due regard to the court's opportunity to observe respondent, we cannot conclude that the court clearly erred in finding that termination was in the child's best interests.

Affirmed.

/s/ William B. Murphy
/s/ Elizabeth L. Gleicher
/s/ Anica Letica