*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re M. S. NAGEL, Minor.

UNPUBLISHED
August 15, 2019

No. 347498
Allegan Circuit Court
Family Division
LC No. 15-055572-NA

Before: GADOLA, P.J., and MARKEY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Respondent-father appeals by right the trial court's order terminating his parental rights to the minor child, MSN, under MCL 712A.19b(3)(c)(*i*) (failure to rectify conditions of adjudication), (c)(*ii*) (failure to rectify other conditions), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood that child will be harmed if returned to parent). For the reasons stated below, we affirm.

Respondent argues that the trial court clearly erred in finding that the grounds for termination were established by clear and convincing evidence and in ruling that termination was in MSN's best interests. We disagree. If a trial court finds that a single statutory ground for termination has been established by clear and convincing evidence and that it has been proved by a preponderance of the evidence that termination of parental rights is in the best interests of a child, the court is mandated to terminate a respondent's parental rights to that child. MCL 712A.19b(3) and (5); *In re Beck*, 488 Mich 6, 10-11; 793 NW2d 562 (2010); *In re Moss,* 301 Mich App 76, 90; 836 NW2d 182 (2013); *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). "This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011); see also MCR 3.977(K). "A finding . . . is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed[.]" *In re BZ*, 264 Mich App 286, 296; 690 NW2d 505 (2004). In applying the clear error standard in parental termination cases, "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989). The trial court must "state on the record or in writing its findings of fact and conclusions of law[,] [and] [b]rief, definite, and pertinent findings and conclusions on contested matters are sufficient." MCR 3.977(I)(1).

The trial court did not clearly err by determining that there was clear and convincing evidence to support termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*). Termination of parental rights under Subsection (3)(c)(*i*) is proper when "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age."

The trial court found that termination was proper under Subsection (3)(c)(*i*) because respondent failed to rectify his substance abuse issues. The trial court indicated that respondent had a "significant history" of methamphetamine use. A substance abuse assessment revealed that respondent had a history of drug abuse dating back to when he was 14 years old. The assessment also reported that respondent was "unlikely" to manage the symptoms of his self-reported schizophrenia without the assistance of medication. Yet he had not sought medication when not incarcerated. The assessment recommended that respondent take steps to demonstrate internal motivation to change, that he attend a minimum of two NA meetings per week, and that he develop a plan for sobriety. The assessment indicated that any "relapse would call for a higher level of treatment, such as an intensive outpatient treatment." The trial court pointed out that respondent had been in and out of jail since February 2017 and that he had not complied with any of the recommendations even when not incarcerated.

The trial court stated that it "resonated deeply" that respondent told the substance abuse assessor that "[i]f [he] was not locked up, [he] was using." The court observed that drug abuse continued to be a theme in respondent's life. The court also recognized that respondent was currently sober, due to his lengthy incarceration, and that respondent had demonstrated a two-year period of sobriety while engaged in drug court. When respondent's father passed away shortly thereafter, respondent relapsed on methamphetamine "to the extent that he felt it was necessary for him to release his parental rights" to another one of his children. The court also noted that respondent was using methamphetamines with MSN's mother while she was pregnant with the child. Although the trial court stated that it appeared that respondent had tested negative for substances three times in 2017, there were at least 10 missed drug screens. The court explained that it could not reasonably infer that respondent was sober during that period. The trial court additionally noted that respondent was using methamphetamines in March 2018. And around that time there was a domestic incident wherein respondent was holding MSN as he locked mother out of the house, leading to his hospitalization in a psychiatric treatment facility. Respondent was using drugs again in April 2018, "just prior to turning himself in on a warrant for a bond violation for failure to appear." The court observed that it was clear that whenever there was a stressful period in respondent's life, he reverted "to substances as a coping mechanism as opposed to seeking legitimate mental health treatment."

In more than 10 months since MSN's removal and 16 months into working with petitioner, respondent failed to accomplish any meaningful change in the conditions that led to the trial court's taking jurisdiction over the minor child. See *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). The principal conditions that led to the adjudication were the same as those that still existed at the time of the termination trial. In this case, the circumstances that led to the adjudication were the termination or relinquishment of respondent's parental rights to three other children and respondent's continued substance abuse.

The trial court record supports the conclusion that at the time of termination the conditions that led to adjudication continued to exist. Additionally, the record supports the trial court's finding that there was no reasonable expectation that respondent would be able to rectify the conditions that led to adjudication within a reasonable time. The trial court presided over this matter for approximately 16 months, during which time respondent showed minimal improvement. Respondent failed to demonstrate that he was able to consistently address and manage the conditions that led to the adjudication on a long-term basis. The court stated that it was struck by that fact that outside of incarceration, when "given the opportunity to remain sober, [respondent] has not done so." The court went on to state that it "does believe that [respondent] has the capability of remaining sober while he is being supervised by a drug court program, or a probation program, or while he is incarcerated." But "[h]e lacks the coping skills, the family support, and the ability to prevent substance abuse going forward." Additionally, MSN was just 16 months old, and respondent did not have a release date from prison until at the very earliest, 2020.

Given these circumstances, the trial court did not clearly err in finding that termination of respondent's parental rights was proper under MCL 712A.19b(3)(c)(*i*). Although it is unnecessary to address the additional grounds for termination, we also hold that the trial court did not clearly err by finding that termination was warranted under Subsections (3)(c)(*ii*), (g), and (j), in light of the evidence discussed above.[1]

With respect to a child's best interests, we place our focus on the child rather than the parent. *In re Moss*, 301 Mich App at 87. In assessing a child's best interests, a trial court may consider such factors as a "child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). A trial court can additionally consider the length of time a child "was in foster care or placed with relatives," and whether it was likely that "the child

---

[1] Respondent also contends that he did not receive adequate reunification services. "In general, petitioner must make reasonable efforts to rectify conditions, to reunify families, and to avoid termination of parental rights." *In re LE Minor*, 278 Mich App 1, 18; 747 NW2d 883 (2008). Although petitioner "has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Laster*, 303 Mich App 485, 495; 845 NW2d 540 (2013) (quotation marks omitted). A parent must meaningfully participate in the services provided and benefit from those services. *In re Gazella*, 264 Mich App 668, 676; 692 NW2d 708 (2005). We conclude that while there may have been some shortcomings, petitioner overall engaged in reasonable efforts at reunification. Also, respondent failed many times to participate in and to benefit from offered services. Moreover, he had been provided services in earlier proceedings but apparently derived no benefits from them.

could be returned to [the parent's] home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012). At this stage, the interest of the child in living in a stable home is superior to any interest of the parent. *In re Medina*, 317 Mich App 219, 237; 894 NW2d 653 (2016).

In determining the best interests of MSN, the trial court considered the fact that she had been in foster care for 10 of her 16 months of life. Additionally, the court referred to the caseworker's testimony about the lack of a bond between the child and respondent. Furthermore, respondent had not completed a parenting class, and the court was "unsure as to his parenting ability because he hasn't been out of jail long enough to demonstrate consistency, sobriety, and stability, [and] to demonstrate that he is an effective parent." The trial court found that respondent did not have the ability to parent MSN. Additionally, according to the court, respondent's participation in his case service plan was sporadic; he missed visitations; he failed to complete the psychological evaluation in a timely manner; he skipped many drug screens; he failed to attend numerous counseling sessions, and he demonstrated very little benefit from services. Further, MSN was very young, and respondent was not going to be in a position to offer her permanency or stability within a reasonable time considering his circumstances. The trial court found that these factors weighed in favor of termination.

The trial court determined that it was not in the child's best interests to continue trying to return her to respondent's care, especially when he did not have a home. In contrast, MSN was safe, loved, and had stability in the care of her foster family, who were open to adoption and would provide permanence. Because of respondent's circumstances, the need for permanency, the high possibility of adoption, and the child's placement in a stable, suitable home with a family that was facilitating her relationship with her extended family, we agree that termination of respondent's parental rights was in MSN's best interests. We hold that the trial court did not clearly err in concluding that termination of respondent's parental rights was in MSN's best interests.

We affirm.

/s/ Michael F. Gadola
/s/ Jane E. Markey
/s/ Amy Ronayne Krause