*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* E. SCHOOLCRAFT, Minor.

UNPUBLISHED
October 11, 2024
11:33 AM

No. 370463
Genesee Circuit Court
Family Division
LC No. 19-136425-NA

Before: GADOLA, C.J., and O'BRIEN and MALDONADO, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to the minor child, ES, pursuant to MCL 712A.19b(3)(b)(*i*) (parent's act caused abuse or injury), (i) (parental rights to one or more siblings terminated due to neglect or child abuse and prior attempts to rehabilitate the parent have been unsuccessful), (j) (reasonable likelihood of harm if returned to parent), and (k)(*iii*) (parent battered, tortured, or severely physically abused child or sibling of child).[1] We affirm.

## I. BACKGROUND

In 2022, respondent's parental rights to a different child, PG, were involuntarily terminated. That case arose after one-month-old PG experienced hemorrhaging and was diagnosed with shaken baby syndrome. Respondent later informed petitioner, the Department of Health and Human Services (DHHS), that she hit PG's head on a shower door and dropped him into a bassinette. During those proceedings, respondent was diagnosed with a low IQ and other cognitive impairments that affected her ability to safely parent. The trial court also learned that, since 2016, respondent had a court-appointed guardian to help her with housing, medical appointments, and

---

[1] The trial court could not identify ES's father during these proceedings and terminated the unknown father's parental rights to ES on the basis of abandonment. ES's father is not a party to this appeal.

financial management. That case resulted in the termination of respondent's rights to PG after she failed to benefit from her case service plan despite receiving services for approximately two years.

The instant case arose in 2023 after respondent gave birth to ES. Because of the circumstances surrounding PG's injury, and because of the termination of respondent's rights to PG and the DHHS's conclusion that respondent had not rectified the conditions that led to the prior termination, no reasonable efforts were made to reunify the family and termination was sought at the initial disposition, though the DHHS still offered respondent weekly supervised parenting time and mental-health services. The evidence at the termination hearing consisted largely of testimony regarding the prior termination and respondent's cognitive abilities. Following the termination hearing, the trial court found that there was sufficient evidence to terminate respondent's parental rights to ES under 712A.19b(3)(b)(*i*), (i), (j), and (k)(*iii*). This appeal followed.

## II. ANALYSIS

Respondent contends that the trial court erred in several respects. First, respondent asserts that the trial court erred by exercising jurisdiction over ES. Second, respondent argues that the trial court erred by determining that reasonable efforts were not required in ES's case. Third, respondent argues that the trial court erred by finding that petitioner had established statutory grounds for termination by clear and convincing evidence. Finally, respondent asserts that the trial court erred by finding that termination was in ES's best interests. We address each argument in turn.

## A. JURISDICTION

Respondent argues that the trial court erred by exercising jurisdiction over ES because the doctrine of anticipatory neglect did not apply in light of the significant differences between ES and PG. We disagree.

We review for clear error a trial court's decision to exercise jurisdiction. *In re Long*, 326 Mich App 455, 460; 927 NW2d 724 (2018). "A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

To properly exercise jurisdiction, the trial court must find by a preponderance of the evidence that a statutory basis for jurisdiction exists. *In re Long*, 326 Mich App at 460. MCL 712A.2(b)(1) and (2) provide that a trial court may exercise jurisdiction over a juvenile:

> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship.

* * *

-2-

(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in.

"In cases with multiple children, the doctrine of anticipatory neglect may apply to confer jurisdiction." *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020). The doctrine of anticipatory neglect recognizes that how a parent treats one child may be probative of how that parent may treat other similarly-situated children. *Id.* "Abuse or neglect of the second child is not a prerequisite for jurisdiction of that child and application of the doctrine of anticipatory neglect." *In re Gazella*, 264 Mich App 668, 680-681; 692 NW2d 708 (2005), superseded by statute in part on other grounds by MCL 712A.19b(5).

In arguing that the trial court erroneously applied the doctrine of anticipatory neglect in exercising jurisdiction over ES, respondent relies on *In re Kellogg*, 331 Mich App 249, and *In re LaFrance*, 306 Mich App 713; 858 NW2d 143 (2014). In both cases, this Court concluded that the doctrine of anticipatory neglect was inapplicable due to significant differences between the children—this Court reasoned each time that, due to those differences, how the parent treated one child was not necessarily probative of how the parent would treat the other child. In *In re Kellogg*, 331 Mich App at 260-261, we explained that how the parent treated the older child was hardly probative of how the parent would treat the younger child because there was a significant age gap between the children; the older child had spent several years away from the parent while the younger child had lived with the parent his entire life; the older child had a "history of trauma and behavioral" issues" while the younger one did not; the older child had multiple diagnoses for various mental-health disorders while the younger child "was not diagnosed with any mental-health disorders"; and a caseworker testified that the respondent did not treat the children the same, showing "clear favoritism" toward the younger child. In *LaFrance*, 306 Mich App at 730-731, we explained that the parents' treatment of the youngest child was not probative of how they would treat their older children because of the significant age gap between the youngest child and the older children; there was no evidence that the parents had ever abused or neglected any of the older children; and the older children "did not share their infant sister's medical vulnerabilities," which included a diagnoses of cerebral palsy, "or inability to articulate personal needs or discomforts."

Respondent argues that this case is like *In re Kellogg* and *In re LaFrance* in that there were marked and significant differences between ES and PG, but the record indicates otherwise. The Children's Protective Services (CPS) investigator in ES's case testified that PG was approximately one month old when he sustained serious injuries and was diagnosed with shaken baby syndrome. ES was one day old when the DHHS removed him from respondent's care, and the trial court recognized that both ES and PG were infants entirely dependent on respondent for care at the time of removal. Respondent testified in her prior termination proceedings that she needed help caring for a child and could not do so without assistance. While respondent lived with her mother when ES was born, respondent's mother informed the DHHS that she frequently traveled for work and would not help respondent care for ES. Respondent provided no evidence that she had additional support or was capable of caring for ES on her own. Further, the clinical psychologist who performed respondent's psychological evaluation in her prior child-protective proceeding testified in this case that respondent's cognitive impairments prevented her from caring for a child on a regular or consistent basis and making appropriate decisions to ensure a child's welfare. In addition to the psychologist's testimony that respondent's impairments were chronic and could not

be rectified with medication, respondent acknowledged that she still had cognitive impairments. The evidence presented thus reflects that there were no significant differences between ES's and PG's needs or respondent's circumstances with each child. We accordingly reject respondent's argument that the trial court erred by applying the doctrine of anticipatory neglect, and conclude that the trial court did not clearly err by exercising its jurisdiction over ES.

## B. REASONABLE EFFORTS

Respondent next argues that the trial court erred by concluding that the DHHS was not required to provide reasonable efforts in this case. We disagree.

We review for clear error a trial court's reasonable-efforts finding. *In re Atchley*, 341 Mich App 332, 338; 990 NW2d 685 (2022). A trial court's interpretation and application of a statute is reviewed de novo. *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014).

Generally, "the Department has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks*, 500 Mich 79, 85; 893 NW2d 637 (2017), citing MCL 712A.18f(3)(b) and (c); MCL 712A.19a(2). However, the DHHS is not required to make reasonable efforts to reunify the family in circumstances identified in MCL 712A.19a(2). See *In re Simonetta*, 340 Mich App 700, 707; 987 NW2d 919 (2022).

While the trial court did not clearly articulate which statutory ground(s) in MCL 712A.19a(2) it was relying on to conclude that reasonable efforts were not required in this case, the court clearly relied in part on MCL 712A.19a(2)(a). That subsection provides that reasonable efforts are not required if "[t]here is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in" MCL 722.638(1) and (2). MCL 712A.19a(2)(a). MCL 722.638(1)(a)(*iii*) concerns circumstances in which a parent has abused a child or the child's sibling, and the abuse included "[b]attering, torture, or other serious physical harm." The trial court reasoned that "an aggravated circumstance is present" in this case because PG—ES's sibling—was subjected to abuse and the abuse involved "battering, torture, or other serious physical harm" given the evidence that PG "suffered from shaken baby syndrome and that's what he was admitted to the hospital for." Other evidence established that respondent admitted that she caused injury to PG by hitting his head on the shower door and dropping him in a bassinette.

On appeal, respondent contends that the trial court erred by concluding that reasonable efforts were not required under this subsection because the "trial court based [its] conclusions on unsupported facts." We disagree. There was evidence that PG was admitted to the hospital with serious injuries, and that, at the hospital, PG was diagnosed with abusive head trauma due to shaking. There was also evidence that respondent admitted that she injured PG by hitting his head and dropping him in a bassinette, and no other explanation was offered for the cause of PG's injuries. These facts support the trial court's findings, and those findings were sufficient to support the trial court's conclusion that aggravated circumstances as provided in MCL 722.638(1)(a)(*iii*) existed. The trial court, therefore, did not err by finding that reasonable efforts were not required pursuant to MCL 712A.19a(2)(a).

The trial court also reasoned that reasonable efforts were not required because respondent's parental rights to PG were terminated and she failed to rectify the conditions that led to that

-4-

termination. The trial court did not identify the statutory basis for this conclusion, and the parties on appeal disagree about which subsection of MCL 712A.19a(2) the trial court was applying. Petitioner argues that the trial court was relying on Subsection (c), which provides that the DHHS is not required to make reasonable efforts to reunify the child and family when "[t]he parent has had rights to the child's siblings involuntarily terminated and the parent has failed to rectify the conditions that led to that termination of parental rights." MCL 712A.19a(2)(c). Respondent, on the other hand, contends that the trial court was relying on Subsection (a) again, but this time was considering a different portion of MCL 722.638—specifically MCL 722.638(1)(b)(*i*), which addresses circumstances in which the DHHS "determines that there is a risk of harm, child abuse, or child neglect to the child," the parent's rights to another child were terminated, and "the parent has failed to rectify the conditions that led to the prior termination of parental rights." As is apparent from the statutory texts, MCL 712A.19a(2)(c) and MCL 712A.19a(2)(a) as applied through MCL 722.638(1)(b)(*i*) overlap significantly, with the most notable difference being that MCL 722.638(1)(b)(*i*) requires that there be a risk of harm, abuse, or neglect to the child, whereas MCL 712A.19a(2)(c) does not. Given that the trial court here did not address whether there was a risk of harm, abuse, or neglect to ES when concluding that reasonable efforts were not required in light of the previous termination of respondent's parental rights, we agree with petitioner that the trial court concluded that reasonable efforts were not required under MCL 712A.19a(2)(c).

It is undisputed that respondent's rights to PG were involuntarily terminated, but respondent asserts that there was insufficient evidence that she had failed to rectify the conditions that led to the termination of her parental rights to PG.[2] The trial court in respondent's prior child-protective proceeding found that respondent did not demonstrate a benefit after participating in services for two years, and it believed that respondent "just did not have the mental capability to retain the information and to be able to be a suitable parent." As previously discussed, respondent's psychologist explained that her cognitive impairments prevented her from consistently and safely parenting a child on her own, and there is no indication in the record that she had the necessary support to safely care for a child. While respondent's guardian testified that respondent lived somewhat independently, worked full time, and managed her own finances when ES was born, this did not address respondent's lack of benefit from services in PG's case or respondent's capacity to safely parent ES. In light of the trial court's prior termination of respondent's parental rights to PG, respondent's lack of benefit from services, and the similarities in respondent's circumstances and cognitive ability, the record supports that the conditions that led to the termination of respondent's parental rights to PG were not rectified. Accordingly, the trial court did not err by finding that the DHHS did not have to make reasonable efforts toward reunification in the present case pursuant to MCL 712A.19a(2)(c).

## C. STATUTORY GROUNDS

Respondent next argues that the trial court clearly erred by finding statutory grounds for terminating respondent's parental rights. On appeal, however, respondent fails to address, or raise

---

[2] Given the significant overlap between MCL 712A.19a(2)(c) and MCL 722.638(1)(b)(*i*), respondent's argument related to MCL 722.638(1)(b)(*i*) largely applies to the trial court's decision that reasonable efforts were not required under MCL 712A.19a(2)(c).

any arguments concerning, the trial court's findings under MCL 712A.19b(3)(b)(*i*); she instead argues only that the trial court clearly erred by finding that the DHHS established statutory grounds for termination under MCL 712A.13b(3)(i), (j), and (k). Because only one statutory ground must be established to terminate parental rights, respondent's failure to challenge the trial court's findings under MCL 712A.19b(3)(b)(*i*) precludes appellate relief for this issue. See *In re JS & SM*, 231 Mich App 92, 98-99; 585 NW2d 326 (1998), overruled in part on other grounds by *In re Trejo Minors*, 462 Mich 341, 353 n 10; 612 NW2d 407 (2000).

## D.  BEST INTERESTS

Finally, respondent argues that the trial court clearly erred by finding that termination of her parental rights was in ES's best interests. We disagree.

We review for clear error a trial court's best-interest determination. *In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 637; 853 NW2d 459 (2014).

"[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court should "focus on the child rather than the parent" when determining whether termination is in the best interests of a child. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). In making a best-interests determination, the court may consider factors such as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case-service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014).

Respondent argues on appeal that the trial court erred by finding that termination of her parental rights was in ES's best interests because respondent had a bond with ES and participated in parenting time. This argument is supported by the testimony of ES's foster care caseworker, who testified that respondent had a bond with ES and commended respondent on her participation in parenting time and ES's medical appointments. However, respondent's bond with ES was only one factor in the trial court's analysis. The trial court considered respondent's bond and her participation in parenting time and weighed those considerations against ES's age, respondent's lack of benefit from services in PG's case, and ES's need for permanency and finality. At the time of termination, ES was less than a year old and his caseworker testified that he needed permanence and stability. The record reflects that the DHHS previously offered respondent approximately two years of services in PG's case, but respondent did not demonstrate any benefit despite her consistent participation. There was no evidence that respondent had a support network to help her safely parent, and there was no indication that she felt comfortable in her ability to parent ES alone. Moreover, ES's caseworker testified that ES was doing extremely well in his foster placement and that the DHHS was moving toward adoption with ES's foster family. Further, ES's caseworker believed that termination of respondent's parental rights was in ES's best interests because respondent could not rectify her inability to safely parent. In light of respondent's prior termination, her lack of benefit from services, her cognitive abilities, ES's age, and ES's need for

permanency and stability, the trial court did not clearly err by finding that it was in ES's best interests to terminate respondent's parental rights.

Affirmed.

/s/ Michael F. Gadola
/s/ Colleen A. O'Brien
/s/ Allie Greenleaf Maldonado